**Nos. 27225 and 27367**

**The People of the State of Colorado v. Freddie Lee Glenn, Jr., now known as Siyani Funsani Masamba; and The People of the State of Colorado v. Freddie Lee Glenn, Jr., now known as Siyani Funsani Masamba**

(615 P.2d 700)

Decided August 25, 1980.

Robert L. Russel, District Attorney, Jerry C. Nelson, Chief Deputy, for plaintiff-appellant (No. 27225).

Jeffrey I. Tompkins, George C. Wing, for defendant-appellee (No. 27225).

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Edward G. Donovan, Solicitor General, Robert C. Lehnert, Assistant Attorney General, for plaintiff-appellee (No. 27367).

Jeffrey I. Tompkins, for defendant-appellant (No. 27367).

*En Banc.*

JUSTICE ROVIRA delivered the opinion of the Court.

The defendant was convicted of first-degree murder, second-degree kidnapping, and aggravated robbery. The People filed an appeal in this court pursuant to C.A.R. 4(b), alleging error in specified rulings of the trial court (Case No. 27225). The defendant filed an appeal in the court of appeals (Case No. 27367), and that appeal was transferred to this court pursuant to section 13-4-110(1)(a), C.R.S. 1973. For purposes of this opinion, we have consolidated the People's and the defendant's appeals.

## ·I. THE PEOPLE'S APPEAL

The defendant was initially charged in an amended indictment with the crimes of first-degree murder,[1] first-degree kidnapping,[2] aggravated robbery,[3] and rape.[4]

### A.

Prior to trial, the defendant moved to strike the charge of rape on the ground that the statute on which the charge was based, section 18-3-401, C.R.S. 1973, had not been in effect at the time of the criminal conduct alleged in the amended indictment. In support of his motion, the defendant

---

[1] Section 18-3-102, C.R.S. 1973 (Vol. 8 & 1976 Supp.).
[2] Section 18-3-301, C.R.S. 1973.
[3] Section 18-4-302, C.R.S. 1973.
[4] Section 18-3-401, C.R.S. 1973

offered into evidence a certified copy of House Bill 1042 from the 1975 Session of the Colorado General Assembly.[5] House Bill 1042 repealed and re-enacted section 18-3-401 *et seq.*, C.R.S. 1973, substituting multiple forms of the crime of "sexual assault" for the previous offenses of "rape," "gross sexual imposition," and related crimes. The amended indictment charged the defendant with the crime of "rape," as that offense was set out in section 18-3-401, C.R.S. 1973, prior to the enactment of House Bill 1042.

House Bill 1042 contained a stated effective date of July 1, 1975, but the bill was not signed by the Governor until 3:50 p.m. on that date. It was stipulated in the trial court that the criminal conduct alleged in this case had occurred after 12:01 a.m. but prior to 3:50 p.m. on July 1, 1975.

In seeking a dismissal of the rape charged based on section 18-3-401, C.R.S. 1973, the defendant argued that House Bill 1042 had been effective for the purpose of repealing that statute as of the bill's stated effective date, *i.e.*, as of 12:01 a.m. on July 1, 1975. In support of this argument, the defendant cited *Colo. Const.* Art. V, Sec. 19, which states in part that "[a]n act of the general assembly shall take effect on the date stated in the act." The defendant argued that he could not properly be charged with rape under section 18-3-401, C.R.S. 1973, since it had been stipulated that the criminal conduct alleged in the amended indictment had occurred after 12:01 a.m. on the date in question.[6]

In opposing the defendant's motion, the People contended that House Bill 1042 did not become effective for the purpose of repealing section 18-3-401, C.R.S. 1973, until 3:50 p.m. on July 1, 1975, when the bill was signed by the Governor. In support of their position, the People cited *Colo. Const.* Art. IV, Sec. 11, which states in part that "[e]very bill passed by the general assembly shall, before it becomes a law, be presented to the governor. If he approve, he shall sign it, *and thereupon it shall become a law.*" (Emphasis added.) The People argued that the defendant had been properly charged under section 18-3-401, C.R.S. 1973 (as it existed prior to House Bill 1042), since it had been stipulated that the criminal conduct charged in the indictment had occurred before 3:50 p.m. on the date in question.[7]

---

[5] Colo. Sess. Laws 1975, ch. 171, at 627-633.

[6] Citing the federal and state constitutional prohibitions against *ex post facto* criminal legislation (*U.S. Const.* Art. I, Sec. 10; *Colo. Const.* Art. II, Sec. 11), the defendant also argued that the revised multiple forms of "sexual assault" enacted by House Bill 1042 were ineffective with respect to criminal conduct which occurred before 3:50 p.m. on July 1, 1975. Both in the trial court and on appeal, the People have agreed with this position and have not sought to charge the defendant with a violation of the revised sexual assault statutes.

[7] *See* section 2-4-303, C.R.S. 1973, the general "saving clause," which provides in part that: "[t]he repeal . . . of any statute . . . shall not have the effect to release, extinguish, alter, modify, or change in whole or in part any penalty, forfeiture, or liability, either civil or criminal, which shall have been incurred under such statute, unless the repealing . . . act so expressly provides, and such statute . . . so repealed . . . shall be treated and held as still remaining in force for the purpose of sustaining any and all proper actions, suits, proceedings, and prosecutions, criminal as well as civil, for the enforcement of such penalty, forfeiture, or liability, as well as for the purpose of sustaining any judgment, decree, or order which can or may be rendered, entered, or made in such actions, suits, proceedings, or prosecutions imposing, inflicting, or declaring such penalty, forfeiture, or liability."

The trial court ruled that House Bill 1042 had become effective for purposes of repealing section 18-3-401, C.R.S. 1973, at 12:01 a.m. on July 1, 1975. The court therefore dismissed from the amended indictment the rape charge based on that statute.[8] We reverse the ruling of the trial court.

This case presents the unusual situation in which a bill repealing a criminal statute is signed into law by the Governor *after* its stated effective date. We must determine whether the repeal of the criminal statute is effective as of the bill's stated effective date (in this case, 12:01 a.m. on July 1, 1975), or as of the date on which the bill was signed by the Governor (in this case, 3:50 p.m. on July 1, 1975). In order to make this determination, we must consider an apparent conflict between the provisions of *Colo. Const.* Art. IV, Sec. 11, and *Colo. Const.* Art. V, Sec. 19.

When a bill repealing a criminal statute is signed into law after the bill's stated effective date, the directive contained in Art. IV, Sec. 11, to the effect that the bill does not "become a law" until it is signed by the Governor,[9] takes precedence over the directive contained in Art. V, Sec. 19, to the effect that a legislative act "shall take effect on the date stated in the act."[10] In our view, then, House Bill 1042 did not "become a law" *for any purpose* until it was signed by the Governor at 3:50 p.m. on July 1, 1975. It follows that section 18-3-401, C.R.S. 1973, was not repealed until 3:50 p.m. on that date, and, since the criminal conduct charged in this case occurred before 3:50 p.m., the defendant was properly charged with rape under section 18-3-401, C.R.S. 1973. *Accord, United States v. Casson,* 434 F.2d 415 (D.C. Cir. 1969); *Robey v. Broersma,* 181 Md. 325, 29 A.2d 827 (1943); *In re Borough of Sharpsburg,* 163 Pa.Super. 84, 60 A.2d 557 (1948).[11]

---

[8] The trial court also struck the word "rape" from that portion of the first-degree murder count of the amended indictment which charged the defendant with the crime of felony murder. *See* section 18-3-102(1)(b), C.R.S. 1973 (1976 Supp.). Because the defendant was nonetheless convicted of first-degree murder under section 18-3-102, C.R.S. 1973 (Vol. 8 & 1976 Supp.), the People have not directly challenged the striking of the word "rape" from the murder charge of the indictment.

[9] Art. IV, Sec. 11, of course, provides two alternate methods through which a bill may "become a law," *viz.,* legislative override of a gubernatorial veto, and failure of the Governor to return a bill to the General Assembly within ten days of its presentment to him unless such return is prevented by the adjournment of the General Assembly. Neither alternate method, however, is implicated in the enactment of House Bill 1042.

[10] The corollary of our holding is that the language in Art. V, Sec. 19, to the effect that a legislative act "shall take effect on the date stated in the act" is limited to the situation in which the act "becomes a law" pursuant to Art. IV, Sec. 11, *prior to* the stated effective date.

[11] The defendant's reliance on *Hirschburg v. People,* 6 Colo. 145 (1881), for the proposition that House Bill 1042 was effective for purposes of repealing section 18-3-401, C.R.S. 1973, as of 12:01 a.m. on July 1, 1975, and for purposes of enacting the new multiple forms of the crime of sexual assault as of 3:50 p.m. on that date, is misplaced. A careful reading of *Hirschburg* indicates that it stands only for the proposition that, when the repeal of a criminal statute takes effect after the commission of acts which the statute would otherwise proscribe, the statute cannot thereafter be applied with respect to those acts in the absence of a "saving clause" such as that contained in section 2-4-303, C.R.S. 1973. *See* fn. 7, *supra.*

### B.

At the close of the People's case, the defendant moved for a judgment of acquittal as to the charge of first-degree kidnapping, arguing that the People's evidence had not shown the specific intent required by section 18-3-301, C.R.S. 1973,[12] to have existed at the time of the initial seizure of the kidnapping victim. The trial court granted the judgment of acquittal, holding that the evidence was insufficient to show "that the Defendant . . . had the specific intent at the time of the kidnapping to force the victim to make a concession or give up something of value in order to secure her release."

The court, however, held the evidence sufficient to support a verdict on the lesser included offense of second-degree kidnapping.[13] The jury was accordingly instructed on the elements of that lesser offense, and a guilty verdict was returned.

On appeal, the People request us to disapprove[14] the trial court's reduction of the crime charged from first-degree to second-degree kidnapping. They characterize the court's ruling as a ratification of the defendant's argument that, as a matter of law, the People were required to show the existence of the specific intent required for a conviction under section 18-3-301, C.R.S. 1973, at the outset of the kidnapping episode. We do not share the People's view of the nature of the trial court's ruling, however, and therefore do not address the issue raised by the People on appeal. Rather, we approve the trial court's ruling as a determination, supported by the evidence, that the specific intent required for a conviction of first-degree kidnapping had not been shown to have existed either at the outset of the kidnapping episode or at any subsequent time during the kidnapping. *See People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973).

### II. THE DEFENDANT'S APPEAL

### A.

The defendant's first argument on appeal is that the trial court erred in admitting into evidence two color photographs of the body of the homicide victim. He contends that the photographs "were unduly

---

[12] *See People v. Bridges,* 199 Colo. 520, 612 P.2d 1110 (1980); *People v. Chatfield,* 199 Colo. 530, 612 P.2d 516 (1980); *People v. Naranjo,* 200 Colo. 1, 612 P.2d 1099 (1980); *People v. Naranjo,* 200 Colo. 11, 612 P.2d 1106 (1980).

[13] Section 18-3-302, C.R.S. 1973.

[14] *See* section 16-12-102, C.R.S. 1973 (1978 Repl. Vol. 8).

inflammatory and lacked any probative value with respect to the issues presented at trial." We do not agree.

The photographs were introduced to show the appearance of the victim's body at the scene of the homicide, as well as the nature and location of her wounds. The record shows that the trial court did not abuse its discretion when it balanced the potential inflammatory effect of the photographs with their probative value and concluded that the photographs should be admitted into evidence. *People v. White,* 199 Colo. 82, 606 P.2d 847 (1980); *People v. Sepeda,* 196 Colo. 13, 581 P.2d 723 (1978); *People v. Steele,* 193 Colo. 87, 563 P.2d 6 (1977); *People v. McCrary,* 190 Colo. 538, 549 P.2d 1320 (1976); *People v. Pearson,* 190 Colo. 313, 546 P.2d 1259 (1976).

### B.

As his second argument on appeal, the defendant contends that the trial court erred in refusing to grant a mistrial on the basis of a remark made by a prospective juror during *voir dire* by the trial court. We do not agree.

The remark on which the defendant bases his argument was made during the following *voir dire* exchange:

"THE COURT: Had you read or heard anything about the case before?

JUROR NO. 3: Yes, this *and a previous trial,* concerning —

THE COURT: Just a minute, just a minute. Just answer my questions yes or no.

JUROR NO. 3: Yes, sir.

THE COURT: Don't go into any elaboration.

JUROR NO. 3: Okay.

THE COURT: You have read something about the case before, is that right?

JUROR NO. 3: Yes, sir." (Emphasis added.)

Because of the prospective juror's further statement that he had formed an opinion of the defendant's guilt, the trial court excused the juror. The court, however, refused to grant a mistrial on the basis of the juror's unsolicited reference to "a previous trial," which was made in the presence of other prospective jurors, some of whom were included in the jury panel before which the defendant was tried.

We find no reversible error in the trial court's refusal to grant the mistrial, in view of that court's wide discretion when ruling on claims of actual or probable prejudice resulting from the receipt by members of a jury in a criminal trial of collateral information about the defendant's uncharged criminal conduct. *Quintana v. People,* 158 Colo. 189, 405 P.2d 740 (1965), *citing Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). In this case, the unsolicited remark cited by the defendant was brief and equivocal. It was not specific to the defendant, and the trial court took immediate measures to prevent

elaboration by the prospective juror who made the remark. The *voir dire* record demonstrates a very slight possibility of prejudice to the defendant, and, in our view, retrial of the defendant is not mandatory in the circumstances of this case. *People v. Anderson,* 41 Colo. App. 55, 582 P.2d 1069 (1978).

## C.

■ The defendant argues that the trial court erred in refusing his tendered instruction on the crime of simple robbery[15] as a lesser included offense of aggravated robbery. We disagree.

The defendant would have been entitled to the simple robbery instruction had there been "a rational basis for the jury to acquit [him] of the greater offense [*i.e.,* aggravated robbery] but convict him of the lesser offense [*i.e.,* simple robbery]." *People v. White,* 191 Colo. 353, 356, 553 P.2d 68, 70 (1976); *Graham v. People,* 199 Colo. 439, 610 P.2d 494 (1980). However, the evidence presented to the jury showed, at a minimum, that the defendant had participated as a complicitor[16] in the commission of an aggravated robbery, as proscribed by section 18-4-302, C.R.S. 1973. There was no rational basis on which the jury could have acted to acquit the defendant of aggravated robbery while convicting him of simple robbery, and the trial court did not therefore err in refusing to instruct the jury on the latter offense.

## D.

■ The defendant's fourth argument on appeal is that the trial court erred in refusing to allow him to call the foreman of the grand jury which returned the amended indictment as a witness in a pretrial hearing concerning the procedures followed by the grand jurors in their secret deliberations. In his brief filed in this court, the defendant concedes that his sole purpose in seeking to call the grand jury foreman as a witness was to "determine if the written amended indictment, signed by the Grand Jury Foreman, was specifically read and considered by each individual [grand] juror." The defendant argued in the trial court that the amended indictment should be quashed in the event that each juror had not individually read the written indictment form.[17]

Our recent decision in *People v. Campbell,* 194 Colo. 451, 573 P.2d 557 (1978), is dispositive of this issue. In *Campbell,* we held, *inter alia,*

---

[15] Section 18-4-301, C.R.S. 1973.

[16] *See People v. Calvaresi,* 198 Colo. 321, 600 P.2d 57 (1979); *People v. Larson,* 194 Colo. 338, 572 P.2d 815 (1977); section 18-1-603, C.R.S. 1973 (now in 1978 Repl. Vol. 8).

[17] The record of the pretrial hearing indicates that the transcript and minutes of the grand jury's general session had been provided to defense counsel, the amended indictment had been read in its entirety to the grand jurors before they retired for their secret deliberative session, copies of the amended indictment had been left in the jury room for the jurors' use during their secret session, and the jurors voted unanimously to return the amended indictment as drafted and submitted to them before their secret session.

that it was not "essential for all members of a grand jury who issue a true bill to specifically observe the formal charging paper and approve its formal language." *Id.*, 194 Colo. at 453, 573 P.2d at 558. In this case, then, since there was no requirement that the grand jurors individually read the written indictment form, the trial court did not err in refusing to allow the defendant to call the grand jury foreman as a witness on the issue of whether they had in fact done so.

E.

The defendant assigns as error the form of the verdict submitted to the jury on the charge of first-degree murder. The verdict as returned by the jury stated that:

"We, the jury, find the Defendant . . . GUILTY of Murder in the First Degree, as charged in Count One of the Indictment."

The defendant contends that the trial court erred in submitting to the jury a general verdict form phrased in terms of the crime of first-degree murder "as charged in Count One of the Indictment," on the ground that the amended indictment under which the charge was originally made was phrased conjunctively, *i.e.*, charging the commission by the defendant of intentional homicide committed "after deliberation" (as proscribed by section 18-3-102(1)(a), C.R.S. 1973 (1976 Supp.)) *and* the commission by the defendant of felony murder (as proscribed by section 18-3-102(1)(b), C.R.S. 1973 (1976 Supp.)).

However, the trial court's instruction on the charge of first-degree murder stated clearly that the jury was entitled to find the defendant guilty of that crime if it determined that he had committed the crime proscribed by section 18-3-102(1)(a), C.R.S. 1973 (1976 Supp.), *or* the crime proscribed by section 18-3-102(1)(b), C.R.S. 1973 (1976 Supp.). The use of a general verdict form referring to the crime "as charged in the information [or indictment]" has been specifically approved by this court in the circumstances presented here. We find no error in the form of the verdict submitted to the jury on the first-degree murder charge. *People v. Edwards*, 184 Colo. 440, 520 P.2d 1041 (1974); *Hernandez v. People*, 156 Colo. 23, 396 P.2d 952 (1964).

F.

Finally, the defendant asserts error in the form of the first-degree murder charge contained in the amended indictment, as well as in the method through which the word "rape" was struck from the felony murder portion of that charge.[18] However, the asserted errors were not preserved for appellate review through contemporaneous objections in the trial court and through inclusion in the defendant's motion for a new trial

---

[18] The word "rape" was stricken from Count One of the amended indictment on the motion of the defendant. *See* Part I.A. of this opinion as well as fn. 8, *supra*.

filed pursuant to Crim. P. 33(a). Since we find no plain error in the form of the indictment or in the method through which it was amended, we do not consider the defendant's arguments. Crim. P. 52(b).

We reverse the district court's dismissal of the rape charge made pursuant to section 18-3-401, C.R.S. 1973, and approve the district court's entry of judgment of acquittal on the charge of first-degree kidnapping made pursuant to section 18-3-301, C.R.S. 1973. The convictions for first-degree murder, second-degree kidnapping, and aggravated robbery are affirmed.