No. 21103.

ALFRED QUINTANA *v.* THE PEOPLE OF THE STATE
OF COLORADO.
(405 P.2d 740)

Decided September 20, 1965.

190

H. Malcolm Mackay, William A. Black, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Aurel M. Kelly, Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice Day.

Plaintiff in error, who will hereinafter be referred to as the defendant or Quintana, was convicted in the Denver District Court of aggravated robbery and conspiracy to commit aggravated robbery. He was sentenced from fifty to sixty years on the robbery charge, with a concurrent sentence of three to six years imposed on the conspiracy count.

The defendant was jointly charged with another person, Raymond Crespin, whose case was disposed of before Quintana's trial. Crespin, after pleading guilty, was sentenced to fifteen to thirty years in the penitentiary for his part in the robbery and conspiracy.

The testimony showed that the two men held up a grocery store. One of them was wearing a white trench coat and the other a brown tweed coat. Both men wore nylon stockings over their faces so that identification of their features was impossible, but the police were given descriptions of their wearing apparel, with the additional information that one of the holdup men — the one in the white trench coat — was "a tall thin fellow." A few minutes after the robbery, about four blocks from the grocery store, the police engaged in a gun battle with two men whose descriptions allegedly fitted the defendant and his alleged co-conspirator. The one wearing a white trench coat was claimed to be the defendant Quintana. He was apprehended at the scene of the shooting affray where a shot fired by one of the policemen creased his skull and where he was run over by a patrol wagon which had been called to the scene. Some articles taken from the persons of the robbery victims were found on Quintana. A policeman driving the patrol wagon testified that as he drove toward Quintana to try to cut off his escape, Quintana shot him in the head.

Quintana's defense, offered through other witnesses, was mistaken identity and a contention that he had

physical infirmities which would have made it impossible for him to have committed the robbery. But he elected not to testify in his own behalf, thus precluding the possibility of any testimonial evidence getting before the jury as to the fact that he had been previously convicted of a felony. The disposition of the case against the co-conspirator Crespin was also not disclosed to the jury by any testimonial evidence during the trial. These two facts are important for a discussion of one point of error which we determine warrants reversal of the judgment.

After the jury had brought in a verdict of guilty and had been discharged, and prior to the date set for argument on the motion for new trial, counsel for defendant was apprised of the fact that on the morning before the jury had assembled to receive instructions from the court and hear final arguments of counsel, one of the jurors had read a newspaper article which contained two facts not in evidence. The lead paragraph of the article stated: "An ex-convict could not possibly have robbed a Denver grocery store, shooting a police officer in the process, his attorney said Wednesday." The article concluded with the paragraph: "A co-defendant, Raymond Crespin, 22, is serving a 15 to 30 year sentence for his part in the robbery." The article was not a factual report of the trial the day involved. The attorney had not "on Wednesday" or any time described his client as an "ex-convict." Such evidence was neither offered nor received by the court and both statements were inadmissible as evidence.

Based on the foregoing, the defendant urged in his motion for a new trial and here, error because of prejudicial and inadmissible evidence within the knowledge of at least one juror during the deliberations by reason of the newspaper article. He argues inability to cure the prejudice by motion for mistrial or to otherwise free the trial from taint because of the information

coming to the defendant's attention after conclusion of the trial and separation of the jury.

The matter of newspaper articles containing factual data which was obtained outside of any information revealed in the course of the trial and which was not admissible in evidence, has given rise to increasing concern by appellate courts throughout the nation.

The question has come before this court on other occasions, but not precisely under the same factual situation as disclosed by this record. But the United States Supreme Court has met the problem squarely and offers a guide to our determination. In *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250, the court said:

"The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. Holt v. United States, 218 US 245, 251, 54 L ed 1021, 1029, 31 S Ct 2, 20 Ann Cas 1138. Generalizations beyond that statement are not profitable, because each case must turn on its special facts. We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence. Cf. Michelson v. United States, 335 US 469, 93 L ed 168, 173, 69 S Ct 213. It may indeed be greater for it is then not tempered by protective procedures."

In the Marshall case the trial judge, on learning that the news accounts had reached the jurors, summoned them into his chambers one by one and inquired of them about the article. Each of the seven jurors assured the trial judge that he would not be influenced by the three articles and that he would decide the case only on the evidence in the record and that he felt no prejudice against the petitioner as a result of the ar-

ticles. The trial judge ruled that there was no prejudice to the petitioner.

▇ Therefore, the Supreme Court, in reversing that case and ordering a new trial, has made it clear that if the article deals with information which would warrant a reversal of the case if it had been directly offered in evidence, a new trial is mandatory.

In *McPhee v. People,* 108 Colo. 530, 120 P.2d 814, the cause was remanded to the trial court to conduct a hearing and to determine from the facts as a matter of law what influence, if any, the published article had on the minds of the jurors in arriving at their verdict. In the Marshall case, *supra,* the court did conduct a hearing and make a finding of nonprejudice. Yet the verdict was not allowed to stand because of the nature of the facts within the knowledge of the jury. In the instant case, the newspaper account is so similar to the facts in the Marshall case that a remand to the trial court to hold a hearing would not cure the error.

In *Perry v. People,* 63 Colo. 60, 163 Pac. 844, this court held that the jury having seen the newspaper account that the defendant was involved in an attempted jail break was prejudicial, especially since the allegations were false. This court there said, and it would be apropos to the situation in the instant case to quote from its opinion:

"It is difficult to understand how the average man can receive information from what he may regard as a reliable source, to the effect that a prisoner has conducted himself as was reported to the jurors in this case, without some impression at least, that the prisoner was a man of criminal intent and purpose."

▇ Other cases in Colorado are distinguishable on their facts. We believe that the rulings therein are not out of harmony with this decision. For example, in *Moore v. People,* 125 Colo. 306, 243 P.2d 425, the alleged misconduct of the jury was known to defendant's counsel during the progress of the trial and before its con-

clusion and was never revealed to the court until after the verdict. In commenting on this peculiar feature of this case, the court said that if the jury's misconduct was not considered of sufficient importance to be brought to the attention of the trial court during the trial, it was too late after gambling on the outcome of the case to assert it as a ground for new trial. The court said the defendant cannot take the position that if the verdict was in his favor, all well and good, and if against him he would then disclose the alleged jury misconduct to obtain a new trial.

 In a more recent case, *Hammons v. People,* 153 Colo. 193, 385 P.2d 592, the facts in a newspaper article were prejudicial but there was no showing that any juror saw the newspaper. The jury had been instructed not to read the newspaper. No one examined them as to whether they had or had not read the article. The court indulged the assumption that the jury obeyed the instructions of the court and had not read the newspaper. It is to be noted here that the trial court in the case at bar, in allowing the jury to separate, admonished them not to discuss the case among themselves but did not caution them in any manner as to what they could do in regard to reading newspaper articles or listening to radio or television news coverage of the trial. Such precautionary instructions should be given to jurors in cases where they are allowed to separate during a trial.

 Another case not involving a newspaper article but concerning oral comments by a bailiff within the hearing of some of the jurors is *McLean v. People,* 66 Colo. 486, 180 Pac. 676, and concerned undisputed evidence which had been introduced during the trial. The court, in ruling that the defendant could not be prejudiced by such remarks, followed the general rule stated in 31 A.L.R.2d 422, that there can be no prejudice if the communication to the jury or the newspaper article which the jury might have seen is fair comment on the

evidence already properly admitted and already before the jury.

In *Thistle v. People,* 119 Colo. 1, 199 P.2d 642, the court held that no prejudice could result to the defendant because the newspaper article considered by the jury involved possible punishment of the defendant, and because the matter of punishment was outside the province of the jury and immaterial.

■ To sum up, then, the rule to be applied in this case was aptly stated in *Holmes v. U.S.,* 284 F.2d 716, citing the Marshall case, *supra,* wherein the court said:

"* * * When it affirmatively appears, however, that individual jurors have read newspaper articles containing information, incompetent if offered at the trial, that the defendant had been previously guilty of criminal conduct, the Supreme Court has held that *a new trial is mandatory.*" (Emphasis supplied.)

■■ One other occurrence which took place during the trial warrants comment. Before the commencement of closing arguments to the jury counsel for the defendant noted the absence of a court reporter and requested that one be brought in to take down the oral argument and to note any of the occurrences that might take place during the argument. This request was denied by the court.

Not having a reporter during all stages of the proceedings, and particularly after one was requested for the recording of final argument, is in violation of Rule Fourteen of the District Court of the Second Judicial District. It provides:

"(a) An official reporter shall attend each session of the Court and record verbatim:

(1) All proceedings, unless the parties with the approval of the judge shall specifically agree to the contrary."

This rule is a permissible supplement to the Colorado Rules of Criminal Procedure and should be followed by the court, particularly on specific request. There

was nothing that occurred during the oral argument which has been called to our attention by affidavit or otherwise which prejudiced the defendant and therefore, under the circumstances, we cannot say that the absence of a reporter during the argument was reversible error. Nevertheless, when objectionable statements and prejudicial arguments are made by counsel in the heat of closing argument, it is very difficult to pinpoint such occurrences in the absence of a reporter's transcript showing actually what occurred; and if counsel wishes to avoid these difficulties in the event of appeal, he should be able to do so without denial of the right by the court.

Other points raised not being of such a nature as to cause reversal of the judgment are not commented upon.

The judgment and sentence are reversed and the cause remanded for new trial.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE McWILLIAMS concur.