**James Dean MILLER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 94–283.**

Supreme Court of Wyoming.

Oct. 6, 1995.

Sylvia Hackl, State Public Defender; Deborah Cornia, Appellate Counsel; David Gosar, Assistant Public Defender, Cheyenne, for appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Sr. Assistant Attorney General; Mary Beth Wolff, Sr. Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; John W. Osborne, Student Intern; Cassandra Stump Ando, Student Intern, Cheyenne, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

Appellant James Miller (Miller) appeals his conviction for conspiracy to kidnap alleging the trial court erred in refusing to grant a mistrial following prejudicial remarks by a potential juror, alleging plain error occurred when a police officer testified and expressed an opinion as to his guilt, and alleging three plain errors occurred in jury instructions.

We reverse and remand for a new trial.

Miller presents these issues:

ISSUE I

Was the jury improperly instructed when jury instruction no. 4 incorrectly set forth the elements of kidnapping?

ISSUE II

Were the jury instructions confusing and contradictory regarding who could properly be a party to this alleged conspiracy?

ISSUE III

Should a mistrial have been granted when a potential juror expressed his belief that Mr. Miller had committed an uncharged crime?

ISSUE IV

Did plain error occur when the chief investigative officer testified that the police stopped monitoring phone calls between Mr. Miller and Mr. Powell because they had collected sufficient evidence to support the conspiracy charge?

Appellee State rephrases the issues as:
I. Did jury instruction no. 4 sufficiently set forth the "object" crime of kidnapping?
II. Were jury instructions no. 3 and no. 9 confusing and contradictory, so they could not be consistently applied by the jury?
III. Did a prospective juror's answers during voir dire taint the jury and deprive appellant of a fair trial?
IV. Was Agent Hughes' testimony an opinion on the guilt of the appellant and did his testimony vouch for the credibility of other witnesses?

**FACTS**

While serving a prison term, Miller and fellow inmate James Ingersoll began discussing kidnapping Miller's ex-wife and her three children. Ingersoll contacted Steven Stacy Powell and told him he and Miller planned to escape and kidnap a woman. After several weeks of receiving phone calls from Ingersoll concerning the plan to escape and kidnap a woman, Powell contacted Division of Criminal Investigation Agent Kevin Hughes. Powell consented to the recording of his phone calls by Hughes.

Between July 14, 1993, and July 21, 1993, several telephone calls from Miller to Powell were recorded, all regarding details of a plan to kidnap Miller's ex-wife and her children. Miller agreed to send Powell money and floor plans of his ex-wife's home. Later, these were mailed. Agent Hughes determined he had sufficient evidence to substantiate charges and discontinued recording phone calls on July 21, 1993. On July 22, 1993, Miller was interviewed by Agent Hughes and admitted he had told Powell he wanted to kidnap his ex-wife, had talked about it with Powell, and had entered into negotiations about it. Miller also admitted he promised to send Powell money and floor plans.

Miller explained his actions to Hughes as a ruse to gain a sentence reduction. During

his time in prison, Miller had turned in weapons and cooperated with the state in other ways causing several officials to favorably recommend he be granted a sentence reduction. Miller believed Ingersoll was illegally selling guns and believed he would gain Ingersoll's trust by pretending to plot the kidnapping. Once Ingersoll trusted him, Miller believed Ingersoll would arrange for weapons to be brought to the penitentiary and Miller would then be able to turn them in to the prison administration and further increase his chances of a sentence reduction. At trial, the state theorized Miller needed guns to execute his escape from prison. After Ingersoll agreed to help him escape, Miller then began to plot the kidnapping of his ex-wife and children.

On May 9, 1994, Miller came to trial for conspiracy to commit kidnapping. During voir dire, a potential juror made statements before the entire panel concerning Miller's connection with the theft of the juror's horse. Based on that statement, Miller's counsel moved for a mistrial. The district court denied the motion. Trial proceeded and Miller was convicted and sentenced to seven to fourteen years on the charge. This appeal followed.

## DISCUSSION

*Jury Instructions*

*Object Crime*

■ In a conspiracy prosecution, the jury must determine whether the commission of a particular crime was the objective of the conspiracy. Since the object crime in this conspiracy prosecution was kidnapping, the court must give an instruction that defines the offense that is the subject of the conspiracy. *United States v. Yasbin*, 159 F.2d 705 (3d Cir.1947) (per curiam); *see Burk v. State*, 848 P.2d 225, 235 (Wyo.1993). Miller contends the jury was improperly instructed when jury instructions incorrectly set forth the elements of kidnapping. Since no objection was made at trial, we review under plain error.

The elements of the crime of conspiracy are:

A person is guilty of conspiracy to commit a crime if he agrees with one (1) or more persons that they or one (1) or more of them will commit a crime and one (1) or more of them does an overt act to effect the objective of the agreement.

WYO.STAT. § 6–1–303(a) (1988).

The kidnapping instruction stated:

The necessary elements of the crime of Kidnapping are:

1. The Defendant conspired to

2. Unlawfully remove another or confine another

3. With intent to hold for ransom or reward or use as a shield or hostage.

If you find from your consideration of all of the evidence that any of these elements have not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

If on the other hand, you find from your consideration of all of the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

WYO.STAT. § 6–2–201 (1988) defines the elements of kidnapping as follows:

(a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal, or if he unlawfully confines another person, with the intent to:

(i) Hold for ransom or reward, or as a shield or hostage;

(ii) Facilitate the commission of a felony; or

(iii) Inflict bodily injury on or to terrorize the victim or another.

(b) A removal or confinement is unlawful if it is accomplished:

(i) By force, threat or deception; or

(ii) Without the consent of a parent, guardian or other person responsible for the general supervision of an individual who is under the age of fourteen (14) or who is adjudicated incompetent.

■ Miller complains the jury instruction did not properly set forth the elements of kidnapping since it referred to conspiracy,

did not completely define the essential element of "removal" and did not provide the statutory definition of "unlawful removal or confinement." He asserts that in combination these errors confused the jury. Although agreeing that in Wyoming the trial judge must instruct the jury on the necessary elements of the crime charged, *Vigil v. State,* 859 P.2d 659, 662 (Wyo.1993), the state contends this applies only when describing the principal crime, conspiracy, since it is the crime charged and a less stringent rule applies when describing the object crime. If the object crime is described sufficiently to assure the accused a fair trial, the state argues no error should be found.

Neither the state's research nor our own uncovered direct authority for this argument. The state analogizes this situation to an underlying crime instruction in a felony murder prosecution and cites to court decisions permitting less particularity when instructing about the underlying crime. However, the state does note that nonbinding model criminal jury instructions direct that the essential elements of the offense which were the object of the conspiracy be listed in the same manner as the crime charged. The better course is for the trial court to instruct the jury about the object crime in the same manner as it would instruct on the crime charged. This bright line course assures the law is accurately and completely declared in an instruction and will be consistently presented.

■ Miller claims the faulty kidnapping instruction violated the rule of law that a jury must be instructed on the necessary elements of the crime charged and deprived him of his state and federal constitutional rights to due process, a fair trial, and a unanimous jury verdict. To demonstrate plain error

1) it must be clear from the record exactly what occurred at trial;

2) Miller must demonstrate the existence of a clear and unequivocal rule of law; and

3) the particular facts of the case must clearly and obviously, not just arguably, transgress that rule;

4) once this criteria is met, Miller must show that some substantial right of an accused has been adversely affected.

*Vigil,* 859 P.2d at 662. Even when constitutional error is alleged, each criterion must be satisfied or a claim for review under the plain-error doctrine will fail. *Vigil,* 859 P.2d at 662.

Our decision in *Gore v. State,* 627 P.2d 1384 (Wyo.1981), explained

that jury instructions are written with the particular facts and theories of each case in mind ... so that they help the jury develop a clear understanding of how the facts are to be determined under the applicable law of the case. The problems the jury may have with the applicable law will differ from case to case and therefore the instructions appropriate to each case may also differ. In many cases, any one of several instructions may be legally correct.

*Gore,* 627 P.2d at 1388–89.

In *Brown v. State,* 817 P.2d 429 (Wyo. 1991), we said

instructions to the jury are designed to inform the jury about the applicable law so that the jury may apply that law to its own findings with respect to the material facts.

*Brown,* 817 P.2d at 439.

■ Given this purpose, the test whether the jury has been instructed on the necessary elements of the crime charged is whether the instruction "leaves no doubt as to under what circumstances the crime can be found to have been committed." *Graham v. United States,* 187 F.2d 87, 90 (D.C.Cir.1950), *cert. denied,* 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1951); *United States v. Salliey,* 360 F.2d. 699, 702 (4th Cir.1966). A failure to give *any* instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction, requiring reversal of the defendant's conviction, *Vigil,* 859 P.2d at 662, quoting *Cole v. Young,* 817 F.2d 412, 423 (7th Cir. 1987) (emphasis added); *Phillips v. State,* 760 P.2d 388, 390 (Wyo.1988); *Redland v. State,* 766 P.2d 1173, 1174 (Wyo.1989).

■ In this case, the instruction was based upon evidence showing a conspiracy to kidnap Miller's ex-wife from her home and

confine her at a distant cabin. Including the word "conspired" as an element of kidnapping and rephrasing the statutory definition of "removal" do not rise to the level of plain error since the instruction leaves no doubt as to the circumstances under which the crime can be found to have been committed.

■ Omitting the statutory definition of "unlawful" does violate the rule that an object crime instruction must list all necessary elements as would be listed for the crime charged. The state contends the rule of *Durham v. State*, 422 P.2d 691 (Wyo.1967) (per curiam), applies and does not require the court to define a term unless it has a definite, technical meaning under the law different from the ordinary meaning and which the jury might therefore not understand. *Durham*, 422 P.2d at 692. We think the state's assertion that the ordinary understanding of an unlawful removal or confinement would be one effected by force, threat, or deception is implausible; however, the question is whether the jury would understand the meaning of unlawful as the statute specifically *restricted* its meaning. *See People v. Figueroa*, 41 Cal.3d 714, 224 Cal.Rptr. 719, 715 P.2d 680, 689 (1986). Where the statute restricts the definition of a term, it should be considered of legal significance and its meaning explained. *See United States v. Anderton*, 629 F.2d 1044, 1048-49 (5th Cir. 1980).

■ Failure to instruct properly on an element of a crime can be plain error. *Vigil*, 859 P.2d at 662. Failure to instruct properly on an element of a crime does not constitute plain error where that element is not contested at trial, or where evidence of the defendant's guilt is overwhelming. *People v. Cowden*, 735 P.2d 199, 202 (Colo.1987). The omission of this definition was not plain error because the specific definition of unlawful was not a contested issue at trial. It was undisputed at trial that if the kidnapping had occurred, it would have been accomplished violently. Miller did not contend that his ex-wife and children would have left willingly. Because the omission of this statutory definition did not contribute to his conviction, Miller was not prejudiced.

## *Contradictory Jury Instructions*

■ When the jury was instructed, the court delivered a conspiracy instruction naming both Ingersoll and Powell as co-conspirators and an instruction declaring a conspiracy could not be formed with a government agent. Miller contends these two instructions are contradictory and confusing and require reversal.

Instruction # 3 stated:

The necessary elements of the crime of criminal conspiracy are:

1. That between the dates of July 14, 1993 and July 22, 1993;

2. In Sheridan County, Wyoming

3. The defendant, **James Dean Miller,**

4. Agreed with one Steven Ingersoll and/or James Stacy Powell that they, or one or more of them, would commit the crime of Kidnapping, a felony under the laws of the State of Wyoming, and that;

5. Subsequent to the agreement, the defendant, or Steven Ingersoll or James Stacy Powell did an overt act for the purpose of furthering the object of the agreement.

If you find from your consideration of all of the evidence that any one of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

If, on the other hand, you find from your consideration of all of the evidence that each element has been proved beyond a reasonable doubt, then you should find the defendant guilty.

Instruction # 9 stated:

You are instructed that there can be no criminal conspiracy involving only the Defendant and a government agent or informer. There is no real agreement when one conspires to break the law only with government agents or informers. The elements of the offense are not satisfied unless the Defendant conspires with at least one true co-conspirator.

At the federal level, most circuits have adopted the rule that a conspiracy cannot be formed with a government agent. *United States v. Barboa*, 777 F.2d 1420, 1422 (10th Cir.1985). Wyoming has not considered the

question; however, instruction # 9 which instructed there could be no conspiracy with a government agent became the law of the case. *Saldana v. State*, 685 P.2d 20, 23 (Wyo.1984), *cert. denied*, 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985); *Sanchez v. State*, 751 P.2d 1300, 1308 (Wyo.1988). In *United States v. Lively*, 803 F.2d 1124 (11th Cir.1986), the court found that a co-conspirator can be a member of the conspiracy before he becomes a government agent. *Lively*, 803 F.2d at 1126. In *Lively*, the defendant's requested instruction had been refused by the trial court:

> Members of the jury, you are hereby instructed that after the arrest of David Richards on March 24, 1985, he became the Government's agent and informer and thereafter could not be a co-conspirator with William David Lively because one who acts as a government agent and enters into a purported conspiracy in the secret role of an informer cannot be a co-conspirator.

*Lively*, 803 F.2d at 1126. On appeal, the court determined the instruction was correct, not substantially covered by other instructions, and a vital aspect of the defense's theory of the case; consequently, the refusal to give the instruction was reversible error. *Lively*, 803 F.2d at 1128.

In this case, the state contends it was a question of fact whether Powell was a government agent and the jury could easily have determined Powell was not acting as an agent or informer. Since the law of the case established that the jury must determine whether and when Powell, a co-conspirator,

was a government agent, the jury should have been instructed adequately on the general principles of the relevant law which they were to apply to the factual issues.[1] *Evans v. State*, 655 P.2d 1214, 1218 (Wyo.1982); *Brown*, 817 P.2d at 439. Viewing the instructions as a whole, we hold the failure to properly instruct the jury regarding these issues resulted in contradictory and confusing jury instructions. *Scheikofsky v. State*, 636 P.2d 1107, 1111 (Wyo.1981); *see Redland v. State*, 766 P.2d. at 1174.

The information filed and the evidence presented at trial indicate the state focused on the telephone conversations recorded after Powell began cooperating with Agent Hughes.[2] Because under instruction # 3 it is possible the jury could have convicted on finding that a conspiracy existed between Miller and Powell after the time Powell allegedly became a government agent, this case must be reversed. *See Redland v. State*, 766 P.2d at 1174.

*Whiteplume Error*

Miller next contends Agent Hughes gave an improper opinion when he testified he stopped monitoring the telephone calls between Miller and Powell because "[w]e believed at the time that we had the full nature and scope of the conspiracy identified and that we had the sufficient evidence that we needed." He relies on *Whiteplume v. State*, 841 P.2d 1332 (Wyo.1992), for his contention that an experienced officer may not give an opinion on the defendant's guilt or inferen-

---

1. In connection with this issue, the question of proper venue arose. The trial was held in Sheridan County, where Powell received Miller's telephone calls and the floor plans of McBride's home. The telephone calls from Miller originated from the prison in Rawlins, Carbon County. Venue for a conspiracy prosecution is controlled by Wyo.Stat. § 6–1–303(c) (1988). The jury was instructed verbatim from the statute:

 > A conspiracy may be prosecuted in the county where the agreement was entered into, or in any county where any act evidencing the conspiracy or furthering the purpose took place.

2. The information filed against Miller stated:
 > ... that JAMES DEAN MILLER and STEVEN THOMAS INGERSOLL did agree with one another and with James Stacy Powell, that they

or one or more of them would unlawfully remove one Vicki McBride from her place of residence or from the vicinity where she was at the time of the removal, or unlawfully confine Vicki McBride with intent to hold Vicki McBride for ransom or reward, and further, that pursuant to said conspiracy and in order to effect the object of the conspiracy, the said JAMES DEAN MILLER and STEVEN THOMAS INGERSOLL did commit one or more of the following overt acts:

. . . .

The information went on to list eleven overt acts, seven of which were phone calls to James Stacy Powell. Those phone calls listed indicated they began on July 14th and ceased on July 22, 1993.

tially vouch for the credibility of other witnesses.

Miller contends that, although Agent Hughes did not expressly give his opinion, he clearly conveyed the thought that sufficient evidence existed to support the conspiracy charge. Miller presented a unique defense in this case and testified to the jury he was not conspiring to kidnap anyone, but was setting up his fellow inmate, Ingersoll. Miller contends the officer's testimony invaded the province of the jury on the ultimate issue of his guilt. He claims the testimony constitutes reversible error since without it, the jury may well have believed his testimony and acquitted him. The state argues Hughes' statement did not constitute an improper opinion, but instead was merely an explanation of why the monitoring of Mr. Powell's phone was discontinued after July 21.

The *Whiteplume* decision discussed *Bennett v. State*, 794 P.2d 879 (Wyo.1990), which addresses the issue presented by Miller. In *Bennett*, this court found testimony concerning the reasons a witness believed the defendant was a drug dealer resulted in "a direct statement of ... opinion that [the accused] is guilty." *Whiteplume*, 841 P.2d at 1338; *Bennett*, 794 P.2d at 882. We held the opinion testimony as to the accused's guilt was error per se "because it is impossible to determine whether the jury may have relied on the expressed opinion in reaching its verdict." *Whiteplume*, 841 P.2d at 1338; *Bennett*, 794 P.2d at 881. The conclusions of both decisions were reached following analysis of the context of complex situations which led to the improper opinion testimony.

In this case, we must agree with the state that Agent Hughes was simply explaining why he ended his investigation. The unartfulness of the agent's answer is problematic and we encourage the prosecution to avoid the suggestion of this type of error upon remand.

*Denial of Motion for Mistrial*

Miller contends his request for a mistrial should have been granted after a potential juror expressed his belief in front of the rest of the panel that Miller had previously stolen the juror's horse. The denial of a motion for mistrial is reviewed under an abuse of discretion standard. *Ramirez v. State*, 739 P.2d 1214, 1219 (Wyo.1987); *Scadden v. State*, 732 P.2d 1036, 1049 (Wyo.1987). A court abuses its discretion when

it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did.

*Duffy v. State*, 730 P.2d 754, 757–58 (Wyo. 1986).

The record shows that during voir dire and in response to the prosecutor's questions, a potential juror said he had feelings as a victim of the crime of horse stealing. Miller's counsel approached the bench and the following exchanged:

COUNSEL: I have no idea what kind of response is going to come from that question but I think it could be very explosive. It's rather open-ended.

PROSECUTOR: Judge, I don't know. I think what may come out is some feelings of bias. Now, if defense counsel doesn't want me to go into feelings of bias, then I'm not sure exactly what I'm supposed to do in jury selection. I haven't asked him any questions about this particular case at this point yet, and I don't know how it's going to have any effect on this.

COURT: Be sure that you make preliminary inquiry as to whether or not it has anything to do with this defendant or what he thinks this case is about first so that we can cut that off at the pass just in case.

(End of bench discussion.)

The prosecutor then asked that potential juror whether those feelings he had as a result of someone stealing his horse had anything to do with the defendant. The potential juror responded in the affirmative. Miller's counsel immediately requested a mistrial:

COUNSEL: We move for a mistrial, your Honor. Right now, the balance of the jury is tainted with [his] answer to the effect basically that my client is a horse thief in addition to everything else he's accused of.

There has been prejudice and I don't think we can avoid the taint.

COURT: [Counsel], you're going to be given an opportunity to clear that up with your own questions. Do you believe that there is a prior case involving your client regarding this horse theft?

COUNSEL: No. It was never reported. That's the problem. That's never been reported. There's been no case, no litigation, no hearing, nothing. What we have is a prospective juror that's just announced to the other jurors that he believes my client is a horse thief, and I don't think there is any possible way to clear it up.

COURT: Well, I disagree. I think it can be handled with instructions to the jury so I'm going to deny the motion.

(End of bench discussion).

A review of the record revealed the court did not deliver cautionary instructions to the jury about disregarding the statement or take other curative steps. After further voir dire in chambers, the potential juror was excused for cause at the close of voir dire.

Miller contends he was denied a fair trial when this evidence of another separate and distinct crime was erroneously put before the jury. He argues his right to a fair trial by an impartial jury is guaranteed in WYO. CONST. ART. 1 § 6, 10, 11, and the U.S. CONST. AMEND. V, VI, XIV, and provides authority from *State v. Massey*, 119 R.I. 666, 382 A.2d 801 (1978), that the guarantee is violated and prejudice results when jurors erroneously learn the individual on trial before them has committed other unlawful acts. In *Massey*, the court held a fair trial is denied whether the information comes to the attention of the jury either by way of testimony or through a statement by a juror on voir dire. *Massey*, 382 A.2d at 803. *Massey* observed that in such instances cautionary instructions may be insufficient to remedy the prejudice and a mistrial must be granted. *Massey*, 382 A.2d at 803–04. Miller also points to *United States v. Lord*, 565 F.2d 831 (2d Cir.1977), which held a juror's reference in voir dire to another crime committed by the defendant warranted reversal.

The state contends this authority stands only for a general rule that disclosures relating to the crime charged and disclosures unequivocally pointing to the defendant's guilt can result in prejudice if not cured by further voir dire or court instructions to the jury. The state asserts that, here, the juror's statement was too vague to be characterized as accusing Miller of being a horse thief and Miller did not avail himself of either option to cure any potential prejudice by further voir dire or instructions.

 The Sixth Amendment to the Constitution of the United States and Art. 1 § 10 of the Wyoming Constitution guarantee the accused in a criminal proceeding a trial by an impartial jury. *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 755 (1961); *Collins v. State*, 589 P.2d 1283, 1289 (Wyo.1979). The constitutional right to due process also guarantees a criminal defendant's right to an impartial jury. *See Ristaino v. Ross*, 424 U.S. 589, 595, n. 6, 96 S.Ct. 1017, 1020, n. 6, 47 L.Ed.2d 258, 263 (1976). An impartial jury consists of those jurors who will conscientiously apply the law and find the facts. *Wainwright v. Witt*, 469 U.S. 412, 423, 105 S.Ct. 844, 852, 83 L.Ed.2d. 841, 851 (1985). Impartiality is not measured easily by tests as it is not a technical conception but rather a state of mind. *United States v. Wood*, 299 U.S. 123, 145, 57 S.Ct. 177, 185, 81 L.Ed. 78, 88 (1936).

 Voir dire examination insures the right to a fair and impartial jury by affording the parties the opportunity to discover potential biases and prejudices of potential jurors. *Jahnke v. State*, 682 P.2d 991, 999 (Wyo. 1984). The trial court has broad discretion concerning the questioning of prospective jurors during voir dire because it has the duty to determine if any of the prospective jurors are so biased and prejudiced they could not render a fair and impartial verdict. *Jahnke*, 682 P.2d at 999; *Smethurst v. State*, 756 P.2d 196, 199 (Wyo.1988). This discretion, however, must be exercised subject to the essential demands of fairness. *Jahnke*, 682 P.2d at 999; *Aldridge v. United States*, 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054, 1056 (1931).

In essence, Miller argues that information the defendant has committed other unlawful acts is so prejudicial that a jury panel's exposure to it is *per se* disqualifying of the entire jury panel. The United States Supreme Court has recognized certain situations where bias would be implied. *Mu'Min v. Virginia*, 500 U.S. 415, 441–42, 111 S.Ct. 1899, 1914, 114 L.Ed.2d 493, 516–17 (1991) (Marshall, J., dissenting); *Smith v. Phillips*, 455 U.S. 209, 222, 102 S.Ct. 940, 948, 71 L.Ed.2d 78, 89 (1982) (O'Connor, J., concurring). The Court held in *Leonard v. United States*, 378 U.S. 544, 84 S.Ct. 1696, 12 L.Ed.2d 1028 (1964) (per curiam) that a panel of prospective jurors will be disqualified when inadvertently exposed to the fact the defendant was previously convicted in a related case. Those jurors were present to sit on defendant's second trial on similar charges and had heard the trial court announce the defendant's guilty verdict in the first trial. *Smith*, 455 U.S. at 223, 102 S.Ct. at 949. The Court also recognized jurors placed in custody of sheriff's deputies who were key prosecution witnesses were presumed incapable of rendering an impartial verdict in *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). *Mu'Min*, 500 U.S. at 442, n. 2, 111 S.Ct. at 1914, n. 2. The Court confirmed in *Patton v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), that under certain circumstances exposure to particularly inflammatory publicity creates so strong a presumption of prejudice that "the jurors' claims that they can be impartial should not be believed." *Patton*, 467 U.S. at 1031, 104 S.Ct at 2889.

Justice O'Connor's concurring opinion in *Smith v. Phillips* observed the doctrine of implied bias was retained by the Court to preserve Sixth Amendment rights. She limited the doctrine, in habeas corpus proceedings, to those extreme situations that would justify a finding of implied bias and listed some examples such as close juror relations between the prosecutor or a trial participant, or juror involvement in the crime, but acknowledged the facts of the *Leonard* decision

as another set of circumstances justifying reversal in direct appeals. Justice O'Connor's concurrence responded to a Court majority which appeared to abandon the doctrine of implied bias. *See Smith*, 455 U.S. at 216–17, 102 S.Ct. at 945–46. Given the uncertain state of the doctrine under the federal constitution we consider Miller's argument under our own state constitution.

This court has twice applied the doctrine of implied bias in decisions considering juror impartiality. *State v. Dobbs*, 70 Wyo. 26, 244 P.2d 280 (1952); *Lee v. State*, 743 P.2d 296, 298 (Wyo.1987). *Dobbs* assumed prejudice when noncompliance with the selection procedures caused a significant number of nonqualified jurors to be empaneled. *Dobbs*, 244 P.2d at 283. Basing its decision upon the constitutional guarantee of WYO. CONST. ART. 1 § 10 to an impartial jury[3], *Lee* implied prejudice as a matter of law on the issue whether a juror who had heard the trial of one defendant was qualified to hear the trial of the second defendant when the crimes charged arose from the same transaction. *Lee*, 743 P.2d at 298. *Lee* reasoned the juror's participation in the first trial would have caused her to form or express an opinion upon the merits of the case regardless of that juror's assurances that she could be impartial. *Lee*, 743 P.2d at 298, relying upon *United States v. Haynes*, 398 F.2d 980, 984 (2d Cir.1968), *cert. denied*, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 124 (1969).

The decision of whether or not a particular situation requires the implication of unfair bias must be made in view of the United States Supreme Court's warning that "[i]f the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day." *Holt v. United States*, 218 U.S. 245, 251, 31 S.Ct. 2, 6, 54 L.Ed. 1021, 1029 (1910). However, we believe in this case the exposure of the jury panel to information by a prospective juror that the accused was possibly involved in another crime is the type of situa-

---

3. WYO. CONST. ART. 1 § 10 states:
 In all criminal prosecutions the accused shall have the right to ... a speedy trial by an impartial jury of the county or district in which the offense is alleged to have been committed....

**354**

tion which requires unfair prejudice to be presumed and requires the jury panel be disqualified. *Quintana v. People,* 158 Colo. 189, 405 P.2d 740, 742 (1965), citing *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959) (exposure of jurors to prejudicial uncharged misconduct warranted new trial). Although this situation might not be treated so under the federal constitution, our decision is based upon the Wyoming Constitution which, on these facts, offers greater protection to the rights of the accused. *Richmond v. State,* 554 P.2d 1217, 1223 (Wyo.1976).

A constitutional presumption of unfair bias in this type of case means the jury panel is adjudged incapable of judging fairly on the evidence in these situations. We therefore hold a mistrial should have been granted and the failure to grant one was an abuse of discretion, requiring reversal.

## CONCLUSION

In a conspiracy prosecution, the district court has the duty to instruct the jury on the elements of the object crime with the same accuracy and completeness afforded instructions on the elements of a principal crime. An instruction that a conspiracy cannot be formed with a government agent must clearly set out the applicable principles of the relevant law. *Whiteplume* error does not exist when a law enforcement agent merely explains his actions and does not offer an improper opinion of the defendant's guilt. Finally, under the circumstances of this case, a mistrial must be declared when a jury panel is erroneously apprised of prejudicial uncharged misconduct by the defendant.

The conviction and judgment of Miller is reversed and remanded for a new trial.