**Steven Charles OLDMAN, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 97–168.

Supreme Court of Wyoming.

March 8, 2000.

Representing Appellant: Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Assistant Public Defender; and Walter Eggers, Assistant Public Defender.

Representing Appellee: William U. Hill, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Sen-

ior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and Sean Scoggin, Student Intern.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

The primary claim of error presented by Steven Charles Oldman (Oldman), who was convicted of a violation of Wyo. Stat. Ann. § 6–2–502 (Lexis 1999),[1] is that an emergency room physician should not have been permitted to testify about statements made to him by the victim with respect to the identity of her assailant. An additional issue is raised attacking the refusal of the trial court to declare a mistrial after a prospective juror, responding to a question by defense counsel on voir dire, declared, in effect, that he thought Oldman was guilty. We hold that the hearsay statements recounted by the emergency physician were admissible in evidence under W.R.E. 803(2) and 803(4), and no error was committed in admitting that testimony. We also hold that the trial judge effectively cured any adverse effect of the comment by the prospective juror by confirming the commitment of the remaining members of the panel to the presumption of innocence. The Judgment and Sentence entered in the trial court is affirmed.

In his Brief of the Appellant, Oldman states the issues in this way:

I. Whether the district court denied the appellant his constitutional right to confront adverse witnesses when it allowed [the emergency room physician] to testify to statements made by [the victim]?

II. Whether the district court should have granted the appellant's motion for a mistrial after a potential juror poisoned the entire panel?

The issues stated in the Brief of Appellee, filed by the State of Wyoming, are:

I. Did the district court properly allow Dr. Steger to testify to Sheila Oldman's statements identifying appellant as the person who had beaten her?

II. Did the district court abuse its discretion when it denied appellant's motion for a mistrial after a prospective juror expressed his opinion of appellant's guilt?

At the time of the material events in this case, Oldman was living in Riverton. The victim also lived in Riverton in an apartment with two of her four children. The victim and Oldman had lived together off and on for some ten to twelve years. They had four children together, and although never formally married, they held themselves out as husband and wife. The victim was six-months pregnant bearing the couple's fifth child. On the afternoon of April 2, 1995, the victim's neighbor heard a male voice yelling and screaming in the victim's apartment. Again at about 3:00 a.m. the next day, the neighbor heard a male yelling, and that was followed by the sound of a woman or a child crying. The neighbor called 911, and reported what he had overheard. He then heard a voice outside in the alley, and looking out his window, he saw a man walking away. He did not see the man's face, but the neighbor described him as having the same build, hair color, and skin tone as Oldman.

Two Riverton police officers were dispatched to the apartment in response to the neighbor's call. Before they arrived at the

---

* Chief Justice at the time of oral argument; retired November 2, 1998.

1. Wyo. Stat. Ann. § 6–2–502 provides:
   (a) A person is guilty of aggravated assault and battery if he:
   (i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
   (ii) Attempts to cause, or intentionally or knowingly causes bodily injury to another with a deadly weapon;
   (iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another; or
   (iv) Intentionally, knowingly or recklessly causes bodily injury to a woman whom he knows is pregnant.
   (b) Aggravated assault and battery is a felony punishable by imprisonment for not more than ten (10) years.

apartment, the dispatcher informed the officers that a badly beaten woman had arrived at the police station. The woman told the dispatcher that she had just left the apartment where the officers had been sent. The officers returned to the station, and they found the victim badly beaten, bleeding, crying, and hysterical. One of the officers asked what had happened, and the victim replied, "My husband beat me up." She then was asked, "Who is your husband"? The victim replied that it was "Steven Oldman."

After the officers obtained some additional details from the victim, they went to the apartment to look for Oldman. They did not find Oldman, and when they returned to the police station, the victim informed them she was pregnant. The officers called an ambulance which took the victim to the hospital. The attending physician, who saw the victim in the emergency room, noted a black and blue eye; facial bruising; and a "significant number of human bite marks" on her back, arm, thigh, hands, and feet. Although the physician did not ask, the victim told him that her husband had beaten her and bitten her.

Oldman was charged with the crime of aggravated assault upon a woman whom he knew to be pregnant in violation of Wyo. Stat. Ann. § 6–2–502(a)(iv). He was tried before a jury on August 14, 1995. The victim did not appear, but a police officer and the attending physician in the emergency room both testified about the statements she made to them identifying Oldman as her assailant. Oldman objected to the testimony of the attending physician as hearsay, but the trial court overruled the objection, invoking W.R.E. 803(4). Oldman was found guilty by the jury, and, on October 10, 1995, the district court pronounced a sentence of seven to ten years in the Wyoming State Penitentiary. Oldman has appealed from the Judgment and Sentence.

In support of his first claim of error, Oldman contends that the trial court should not have allowed the emergency room physician to testify about the statements the victim made to him during the course of the medical treatment. The State argues that both W.R.E. 803(2) and 803(4) justify the testimony of the physician about the victim's statements. The trial court ruled that the testimony was admissible as an exception to the hearsay rule under W.R.E. 803(4), citing as authority *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). We hold that the testimony was admissible under either paragraph of W.R.E. 803. We eschew the temptation to dispose of this claim of error on the ground that the testimony was simply cumulative to the testimony of the investigating police officer, which the trial court received over a similar defense objection pursuant to W.R.E. 803(2). The testimony of the police officer is not an issue on appeal.

Our review of rulings by a trial court, admitting or excluding evidence, is premised upon deference to the trial court, and we do not reverse a case because of evidentiary rulings unless an abuse of discretion is demonstrated. *Horton v. State,* 764 P.2d 674, 676–77 (Wyo.1988). Recently, we revisited the definition of "abuse of discretion" in *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998). We ratified in *Vaughn* our adoption of this definition in *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986):

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236 (1985).

In *Blake v. State,* 933 P.2d 474, 477 (Wyo. 1997), we expressed the same concept in slightly different language, saying "[t]he burden is upon appellant to demonstrate such abuse, *i.e.,* that the court acted in a manner exceeding the bounds of reason and could not rationally conclude as it did." Our inquiry into this claim of error is framed in the context of whether the trial court drew conclusions from objective criteria; exercised a sound judgment with regard to what is right under the circumstances; and did not act arbitrarily or capriciously.

Hearsay evidence generally is excluded by W.R.E. 802, which provides, "[h]earsay is not admissible except as provided by these rules

or by other rules adopted by the Supreme Court of Wyoming or by statute." The definition of hearsay is found in W.R.E. 801(c): "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Twenty-three specific exceptions to the hearsay rule together with a catch-all exception are set forth in W.R.E. 803 which permits testimony on evidence that W.R.E. 802 otherwise would exclude. The second exception found in W.R.E. 803(2) permits evidence as to "excited utterance," and W.R.E. 803(4) permits "[s]tatements for purposes of medical diagnosis or treatment."

An excited utterance, defined by W.R.E. 803(2), is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition[.]" We have said with respect to the excited utterance exception:

> The exception is founded upon the proposition that a statement made during the stress of excitement resulting from a startling event is probably trustworthy, since there is not leisure to reflect, contrive or fabricate. *Lancaster v. People*, 200 Colo. 448, 615 P.2d 720 (1980); *Bankers Life Co. v. Nelson*, 56 Wyo. 243, 108 P.2d 584 (1940), *rehearing denied*, 56 Wyo. 513, 111 P.2d 136 (1941).

*Kelly v. State*, 694 P.2d 126, 130 (Wyo.1985).

> The rule assumes the presence of a startling event which temporarily stills the senses and alleviates any motive to fabricate. *Horton*, 764 P.2d at 674.

*Stephens v. State*, 774 P.2d 60, 74 (Wyo.1989). A leading treatise explains that the excited utterance exception is justified by "the special reliability that is furnished when excitement suspends the declarant's powers of reflection and fabrication." 2 John W. Strong, *McCormick on Evidence* § 272 at 204 (5th ed.1999).

Pursuant to W.R.E. 803(4), "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" can be received in evidence. According to the same treatise, this exception finds its basis in "the likelihood that the patient believes that the effectiveness of the treatment depends on the accuracy of the information provided to the doctor * * *." 2 John W. Strong, *McCormick on Evidence*, supra, § 277 at 233.

Statements that have the effect of attributing fault or causation generally are not admissible in evidence under W.R.E. 803(4) because they are not relevant to diagnosis or treatment. *Stephens*, 774 P.2d at 72. We have, however, recognized this exception to the hearsay rule when the statement is perceived as necessary for diagnosis or treatment. The exception was acknowledged and applied in *Goldade v. State*, 674 P.2d 721, 726 (Wyo.1983), *cert. denied*, 467 U.S. 1253, 104 S.Ct. 3539, 82 L.Ed.2d 844 (1984), and it has been applied or acknowledged in *Blake*, 933 P.2d at 480; *Curl v. State*, 898 P.2d 369, 376 (Wyo.1995); *Betzle v. State*, 847 P.2d 1010, 1017–18 (Wyo.1993); and *Stephens*, 774 P.2d at 72. The United States Court of Appeals for the Eighth Circuit first articulated a two-part test for invoking this exception in *United States v. Iron Shell*, 633 F.2d 77, 84 (8th Cir.1980), *cert denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). The test was clarified in *United States v. Renville*, 779 F.2d 430, 436 (8th Cir.1985), in which the court said:

> [F]irst, the declarant's motive in making the statement must be consistent with the purposes of promoting treatment [or diagnosis]; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis.

*Renville*, 779 F.2d at 436. This test was quoted in *Stephens*, 774 P.2d at 72. In *Stephens*, we held that the foundation suggested by the *Renville* test was not supplied by the record. *Stephens*, 774 P.2d at 73.

The first prong of the *Renville* test demands that "the declarant's motive in making the statement must be consistent with the purposes of promoting treatment [or diagnosis.]" *Renville*, 779 F.2d at 436. Identi-

ty rarely is germane to the promotion of treatment or diagnosis, but we, as well as other courts, have recognized that such statements can be relevant to treatment in instances of child abuse. *United States v. George,* 960 F.2d 97, 99–100 (9th Cir.1992); *Morgan v. Foretich,* 846 F.2d 941, 949 (4th Cir.1988); *Goldade,* 674 P.2d at 726; *State v. Jeffers,* 135 Ariz. 404, 420–21, 661 P.2d 1105, 1121–22, *cert denied,* 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983); *State v. Jensen,* 313 Or. 587, 597, 837 P.2d 525, 530–31 (1992). The rationale for relevance in such instances is that "the physician must be attentive to treating the emotional and psychological injuries which accompany this crime." *Renville,* 779 F.2d at 437.

In *Blake,* 933 P.2d 474, we extended this exception to a sixteen-year-old victim of domestic sexual abuse. The United States Court of Appeals for the Tenth Circuit has applied it in a sexual assault case. *United States v. Joe,* 8 F.3d 1488, 1494–95 (10th Cir.1993), *cert. denied,* 510 U.S. 1184, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994). In *Joe,* the statement of the victim to an attending physician was that her estranged husband had raped her. The United States Court of Appeals for the Tenth Circuit ruled that the statement was admissible under F.R.E. 803(4), reasoning:

> All victims of domestic sexual abuse suffer emotional and psychological injuries, the exact nature and extent of which depend on the identity of the abuser. The physician generally must know who the abuser was in order to render proper treatment because the physician's treatment will necessarily differ when the abuser is a member of the victim's family or household. In the domestic sexual abuse case, for example, the treating physician may recommend special therapy or counseling and instruct the victim to remove herself from the dangerous environment by leaving the home and seeking shelter elsewhere. In short, the domestic sexual abuser's identity is admissible under Rule 803(4) where the abuser has such an intimate relationship with the victim that the abuser's identity becomes "reasonably pertinent" to the victim's proper treatment.

*Joe,* 8 F.3d at 1494–95 (footnote omitted). There is no logical reason for not applying this rationale to non-sexual, traumatic abuse within a family or household, since sexual abuse is simply a particular kind of physical abuse. We hold that the victim's statements to the emergency room physician were consistent with the purpose of promoting diagnosis and treatment.

In its second prong, the *Renville* test requires that "the content of the statements must be such as is reasonably relied on by a physician in treatment or diagnosis." *Renville,* 779 F.2d at 436. In most cases, to treat or diagnose a physician would have no need to know who was responsible for the injury. 2 John W. Strong, *McCormick on Evidence, supra,* § 277 at 233. In a case such as this, however, the identity of the assailant is highly relevant in order for the physician to prescribe an appropriate course of treatment. There are two reasons that justify this holding. First, the victim's injuries included numerous human bites. It was important for the emergency room physician to know the source of the bites in order to treat the victim properly for any infectious condition related to the assailant. Second, the victim had been so brutally abused by the named assailant that the hospital reasonably could rely on her statement in order to deny access to the hospital by the assailant. This would prevent further abuse or injury which could impede her recovery both physically and psychologically. The identity of the assailant in this case was relevant to the effort of the emergency room physician to treat the abuse as an underlying cause, rather than simply the injuries that were inflicted on this occasion. We hold that the trial court properly admitted the testimony of the examining physician as an exception to the hearsay rule under W.R.E. 803(4).

■ At trial, the State also argued that the testimony of the examining room physician was admissible as an excited utterance under W.R.E. 803(2). The trial court did not rely upon W.R.E. 803(2) in admitting the testimony, but if evidence properly was admitted under any exception to the hearsay rule we must affirm its admission into evidence. *Hopkinson v. State,* 632 P.2d 79, 129

(Wyo.1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). We hold that in addition to it being admissible under W.R.E. 803(4), the testimony of the examining room physician also was admissible under W.R.E. 803(2).

■ A similar situation was presented to this Court in *Horton,* 764 P.2d at 677–78. We held in that case that the statement of the victim to an emergency room physician identifying his assailant was admissible under W.R.E. 803(2). *Horton,* 764 P.2d at 678. We there invoked a five-factor test to determine whether such evidence properly was admitted as an excited utterance. The five factors were discussed in *Matter of GP,* 679 P.2d 976, 1003 (Wyo.1984); specifically identified in *Clarke v. Vandermeer,* 740 P.2d 921, 927 (Wyo.1987); and listed in this way in *Horton,* 764 P.2d at 678:

"1. The nature of the startling event;

"2. The declarant's physical manifestation of excitement;

"3. The declarant's age;

"4. The lapse of time between the event and the hearsay statement; and

"5. Whether the statement was made in response to an inquiry."

■ In this case, the first factor weighs heavily in favor of admissibility. The savage beating of a pregnant woman disclosed by this record obviously had a shocking effect, and her concerns over her own well-being and that of the unborn child inhibited the capacity for reflection or fabrication. The second factor also favors admission in this case. The victim physically manifested her excitement in very apparent ways; the examining room physician described her demeanor as "quite distraught and hysterical" and "upset." The third factor is neutral with respect to these facts, but the fourth factor favors admission. The precise time elapsing between the beating and the statement is not clear from the record, but the record does show that the victim arrived at the police station within minutes after the neighbor called 911, and she was transported to the emergency room at the hospital within a short time. The final factor heavily favors admission because the victim made the statement to the examining room physician that inculpated Oldman before the doctor asked her any questions.

This five-factor test is a useful tool for evaluating the admissibility of such evidence by the trial court, but the ultimate question is whether the condition of the declarant at the time was such that the statement was spontaneous, excited or impulsive, rather than the product of reflection and deliberation. *Matter of GP,* 679 P.2d at 1003 (*quoting Iron Shell,* 633 F.2d at 86). Based on the descriptions of the victim, which the examining room physician and other witnesses provided at the trial, it is clear that the victim's condition indeed was such that her statement was entirely spontaneous and not the result of reflection, deliberation, or fabrication. This evidence, which pointed to Oldman as the assailant, was admissible as an excited utterance under W.R.E. 803(2) as well as W.R.E. 803(4).

■ We turn to the second claim of error asserted by Oldman. He argues that the trial court should have granted his motion for a mistrial after a potential juror opined, in the presence of the entire panel, that Oldman was guilty. The Constitution of the State of Wyoming guarantees criminal defendants the right to a jury trial. Wyo. Const. art. 1, § 9. An essential element of the guarantee of a jury trial is that the jury be impartial. *Lapp v. City of Worland,* 612 P.2d 868, 873 (Wyo.1980).

■ The grant or denial of a motion for mistrial also is within the sound discretion of the trial court. We do not reverse a decision on a motion for mistrial in the absence of a clear abuse of the trial court's discretion. *Clegg v. State,* 655 P.2d 1240, 1243 (Wyo.1982), followed in *Capshaw v. State,* 958 P.2d 387, 390 (Wyo.1998). We have set forth the standard with respect to an abuse of discretion in the part of this opinion addressing the evidentiary rulings.

Oldman cites *Miller v. State,* 904 P.2d 344 (Wyo.1995) to justify his claim of error. In *Miller,* we ruled that the trial court abused its discretion when it overruled the defendant's motion for a mistrial. In that case, a potential juror, in the presence of the rest of

the panel, had indicated that Miller previously had stolen the juror's horse. *Id.* at 351. The trial court had denied a defense motion for a mistrial, and, although the potential juror was excused for cause, the court had failed to instruct the jury to disregard the statement or take any other corrective action. *Id.* at 352. We held that those circumstances invoked a constitutional presumption of unfair bias and demonstrated an abuse of discretion by the trial court. *Id.* at 354.

This case is distinguishable with respect to two salient points. First, the nature of the prospective juror's remarks and second, the court's reaction to those remarks. The venireman in *Miller* stated that he had personal knowledge that the defendant had committed a previous crime. We said there that the exposure of the jury panel to such specific information required a presumption of implied juror bias and the disqualification of the panel. *Miller,* 904 P.2d at 354 (*citing Quintana v. People,* 158 Colo. 189, 405 P.2d 740, 742 (1965) and *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959)). By contrast, in this case, the venireman said:

> You've spent a lot of money so far on this case. You've got him to court. And in my opinion, if I had this opinion right now, I'd say he's guilty because I believe you've done what you think is right.

This juror did not claim any personal knowledge that Oldman had committed a criminal offense. The remarks were not specific to Oldman or to the case. Essentially, they demonstrated a general attitude about the criminal justice system. On this premise, this case is distinguishable from the direct accusation involved in *Miller.*

In *Miller,* the trial court did not instruct the jury to disregard the venireman's remarks, nor were any other measures taken to endeavor to ensure that the jury was untainted by the comment. *Miller,* 904 P.2d at 352. In this case, the trial court took prompt and appropriate remedial steps. The trial court excused the venireman for cause immediately, and then made the following comments to the panel:

I guess let me ask this question to all the panel. And if any of you have any problems with this . . .

Do any of you disagree with the presumption of innocence? Now, the presumption of innocence, as Mr. Young—and even though I'm supposed to instruct on the law, presumption of innocence is that, as Mr. Oldman sits here today before all of us, he is presumed innocent.

Does anyone else have any problems with that?

And so you all are presuming at this moment that Mr. Oldman is innocent? Is that correct?

And that you also then agree, because these are things on which I will instruct, that it is up to the State—Mr. Oldman is innocent, as I said, and it will be up to the State to prove the elements of the crime beyond a reasonable doubt.

Does anyone have any problems with that?

Okay. So you've all told me that Mr.—you believe that Mr. Oldman has a presumption of innocence. He's innocent right now as he sits in this courtroom. And number two, it's going to be up to Mr. Young and to Mr. Martin to prove to you beyond a reasonable doubt that Mr. Oldman committed the crime.

Okay. We can proceed then.

By its comments and questions, the trial court assured itself that the remaining jurors not only understood the presumption of innocence, but that they were committed to it, and that they understood the State's burden of proof. The jurors manifested their willingness to abide by the instructions of the trial court.

We conclude that in this case, the trial court did not abuse its discretion because it exercised sound judgment with regard to what was right under the circumstances and did not act arbitrarily or capriciously. No error was committed in the denial by the trial court of Oldman's motion for mistrial.

The Judgment and Sentence of the trial court is affirmed.