Lawrence Michael ROSS, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 95–178.

Supreme Court of Wyoming.

Dec. 20, 1996.

Sylvia L. Hackl, State Public Defender; Deb Cornia, Appellate Counsel; Gerald M. Gallivan, Director, Defender Aid Program, Delia Reeves, Student Intern; and Dan Erramouspe, Student Intern, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Colleen K. Coebergh, Special Assistant Attorney General, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN, * and LEHMAN, JJ.

TAYLOR, Chief Justice.

Appellant complains that his conviction for child abuse was obtained by the impermissible introduction of his wife's conviction for failure to protect their child—a crime arising out of the same circumstances. Appellant also scores the introduction of prior bad acts evidence, allegedly in violation of W.R.E. 404(b), and complains of prosecutorial misconduct. Failing to show prejudice from the introduction of his wife's conviction, and unable to establish improper introduction of prior bad acts evidence or prosecutorial mis-

* Chief Justice at time of oral argument.

conduct, appellant offers no valid basis upon which to overturn his conviction. We affirm.

## I. ISSUES

Appellant, Lawrence Michael Ross (Ross), identifies three arguments:

### ARGUMENT I

The trial court erred when it allowed statements about Misti Dawn Ross' previous misdemeanor conviction to be presented to the jury when those statements could not be used for the purpose of inferring the appellant's guilt, nor could they be used for impeachment purposes.

### ARGUMENT II

The district court abused its discretion when it allowed testimony of prior bad acts into evidence without adequately reviewing its admissibility under W.R.E. Rule 404(b) and applicable Wyoming law or its prejudicial weight under W.R.E. Rule 403 and its applicable Wyoming law.

### ARGUMENT III

The appellant was denied his right to a fair trial due to prosecutorial misconduct.

The State identifies essentially the same issues:

I. Whether plain error was committed when testimony regarding Misti Dawn Ross's nolo contendere plea was admitted in the State's case in chief.

II. Whether the district court erred in allowing testimony regarding prior injuries to the child victim.

III. Whether prosecutorial misconduct was committed which denied to appellant his right to a fair trial.

## II. FACTS

In September of 1994, five and one-half month old Richard Ross was taken by his mother to the doctor's office because of an injury to his arm. The injury was diagnosed as a broken arm and set. Precautionary x-rays, however, revealed additional fractures involving the child's other arm, his left collar bone, and nine ribs, all in various stages of healing. The amount of force necessary to cause such injuries was quantified by reference to similar injuries seen in children thrown from a car in the course of a collision or having fallen from a second or third-story window.

Ross subsequently acknowledged that he seldom held his son; but, when he did, "the baby would cry and scream * * *." When that happened, Ross' wife would ask for the child but Ross would refuse, his son screaming as Ross "held him tighter and tighter." Confronted with the extent of his young son's injuries, Ross admitted to being under a great deal of stress, indicating that he would "hate to think that those injuries occurred" on those occasions when he held the boy "too tight." Ross' wife initially maintained that her son's broken arm had come from falling off a bed onto a carpeted floor. When told of the seriousness of her son's injuries, however, Mrs. Ross eventually admitted that Ross would hold her son "really tight. He would squeeze him."

Prior to Ross' trial, his wife pled guilty to failure to protect their son and was sentenced to five years of supervised probation. Ross was charged with child abuse in violation of Wyo.Stat. § 6–2–503(a)(ii)(A) (1988), although only the information's recitation of the date upon which the offense was alleged to have occurred made it clear that the charge concerned the child's broken arm, rather than the larger course of conduct which had resulted in the boy's numerous other broken bones.

The State notified Ross and the district court, well in advance of trial, of its intention to call a medical expert to testify concerning the victim's prior injuries, characterizing such testimony as W.R.E. 404(b) "course of conduct evidence." Following a defense motion *in limine* seeking exclusion of the prior injury evidence, the district court ruled that evidence would be admissible under either W.R.E. 404(b) or a "res gestae theory so long as there is shown by testimony or other evidence to be a nexus between [Ross'] conduct or actions and the injuries." While excluding x-rays of the earlier injuries as unduly prejudicial, the district court ruled

during trial that a nexus between Ross' conduct and those injuries had been sufficiently demonstrated to allow admission of the expert's testimony.

A jury trial culminated in a verdict of "guilty," and this appeal timely followed.

## III. STANDARD OF REVIEW

■ Decisions regarding the admission or exclusion of evidence are within the sound discretion of the trial court. *Taylor v. State,* 642 P.2d 1294, 1295 (Wyo.1982). Absent a pretrial motion to suppress or objection at trial, admission of evidence must amount to plain error in order to presage reversal. *Urrutia v. State,* 924 P.2d 965, 969 (Wyo.1996).

> This court will find plain error when the record clearly shows the incidents alleged as plain error, and appellant has demonstrated the violation of a clear and unequivocal rule of law, that a substantial right has been denied and that appellant has been materially prejudiced. *Lobatos v. State,* 875 P.2d 716, 721 (Wyo.1994).

*Trujillo v. State,* 880 P.2d 575, 578 (Wyo. 1994).

■ A trial court's decisions regarding admissibility of uncharged misconduct evidence are entitled to great deference on appeal. *James v. State,* 888 P.2d 200, 203 (Wyo.1994). If a legitimate rationale can be shown for the admission of such evidence, we will not find abuse of discretion. *Dean v. State,* 865 P.2d 601, 606 (Wyo.1993). Our analysis of whether uncharged misconduct evidence has been properly admitted employs the four-part test articulated in *United States v. Herndon,* 982 F.2d 1411, 1414 (1992), *aff'd on appeal after remand,* 34 F.3d 1077 (10th Cir.1994). *Vigil v. State,* 926 P.2d 351, 356–57 (Wyo.1996).

■ A trial court's decision to grant or deny motions for mistrial is reviewed under an abuse of discretion standard. *Miller v. State,* 904 P.2d 344, 351 (Wyo.1995). This is no less true when such a motion is precipitated by alleged prosecutorial misconduct. *Hodges v. State,* 904 P.2d 334, 343 (Wyo. 1995). An abuse of discretion has been described as a ruling which " 'exceeds the bounds of reason under the circumstances. In determining whether there has been an

abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did.' " *Miller,* 904 P.2d at 351 (*quoting Duffy v. State,* 730 P.2d 754, 757–58 (Wyo.1986)).

■ Finally, claims that a prosecutor has overstepped the bounds of permissible conduct are settled by reference to the entire record, and depend upon whether a defendant's case has been so prejudiced as to effectively deny his right to a fair trial. *King v. State,* 780 P.2d 943, 951 (Wyo.1989).

## IV. DISCUSSION

### A. PRIOR CONVICTIONS OF WITNESS

The State's opening statement promised the jury evidence that Ross' wife had previously admitted guilt to a misdemeanor charge of failing to protect her son from his father. When that promise was fulfilled, the absence of a timely objection by Ross' trial counsel would not appear sufficient to save the State's case from reversal, predicated on the rule of *Kwallek v. State,* 596 P.2d 1372 (Wyo.1979). *Kwallek,* as reaffirmed by *Urrutia,* contemplates situations in which two individuals are prosecuted for different offenses arising out of the same circumstance, rendering "the fact that one has pleaded guilty * * * inadmissible against the other." *Kwallek,* 596 P.2d at 1375. The *Kwallek* rule is predicated on notions of fundamental fairness:

> The rationale is that evidence of a witness' guilt for an offense which arose out of a circumstance leading to the defendant's trial implies that the defendant is also guilty. Such an implication violates a defendant's right to have a trial on its own merits. *Kwallek,* 596 P.2d 1372.

*Wells v. State,* 846 P.2d 589, 595 (Wyo.1992).

■ Employing plain error analysis, it is readily apparent that the *Kwallek* rule is as clear and unequivocal as is the violation thereof on the record of these proceedings. There is no question that Ross' right to a fair trial includes the right not to be convicted in whole or in part on the basis of his wife's plea of guilty to failure to protect the victim. The question remains, however, of whether

Ross was truly prejudiced by the State's introduction of his wife's guilty plea when that guilty plea was the very lynchpin of his defense.

Ross' trial strategy was first articulated during *voir dire* when his counsel asked a prospective juror: "Did you read in the paper that both the husband and the wife were accused of this [child abuse]?" During opening statement, counsel for Ross promised to create doubt as to whether it was Ross or his wife who actually abused their son. Ross' theory was that Mrs. Ross had been the "real abuser," but had engineered a plea agreement with the prosecutor in return for her testimony implicating Ross. Central to such a theory was elucidation of Mrs. Ross' plea bargain, through her testimony. That is what Ross' attorney promised the jury and what he gave them during cross examination of Mrs. Ross. As part of his strategy, Ross' attorney even went so far as to have Ross' wife admit that both she and her husband had been charged with neglect in a juvenile court action.

Given Ross' theory of the case, it is apparent that what truly would have prejudiced his defense would have been a refusal on the part of the State to talk about his wife's conviction. No prejudice has been shown and, therefore, no plain error can be predicated upon the district court's admission of testimony which provided the very foundation of Ross' theory of the case.

### B. PRIOR INJURIES TO THE VICTIM

In his second argument, Ross objects to testimony concerning the prior injuries sustained by his son as "bad acts evidence improperly admitted and presented to the jury," in violation of W.R.E. 404(b). Initially, we note that none of the witnesses who discussed the victim's prior injuries suggested to the jury that those injuries were caused by prior behavior of Ross. Mrs. Ross testified that she observed Ross holding their son too tightly, but no one expressed an opinion as to Ross' culpability with respect to the earlier injuries.

More important to our resolution of this issue was the State's notice to Ross, prior to trial, of an intent to introduce evidence of the prior injuries and the district court's subsequent ruling that such evidence was admissible, under either W.R.E. 404(b) or a *res gestae* theory.

Prior to promulgation of our rules of evidence, the concept of *res gestae* was applied to overcome hearsay objections to contemporaneous statements which shed light on " 'any of what may be termed real or natural facts and circumstances in any way connected with the transaction and from which any inference as to the truth of the disputed fact can reasonably be made.' " *Johnson v. State,* 8 Wyo. 494, 504, 58 P. 761, 763 (1899).

Such hearsay objections would, nowadays, likely be overcome by rules of evidence permitting admission of present sense impressions and excited utterances. W.R.E. 803(1) and (2). *See Horton v. State,* 764 P.2d 674, 677 (Wyo.1988). Though passe' in Wyoming, *res gestae* is treated, elsewhere, as a broader concept, embracing other "evidence which does not constitute a portion of crimes charged but has a natural, necessary, or logical connection to the crime." *State v. Gadelkarim,* 256 Kan. 671, 887 P.2d 88, 101 (1994). *See also People v. Rollins,* 892 P.2d 866, 872–73 (Colo.1995). Certainly, there may be those instances where particular evidence, though possibly manifesting the existence of additional crimes, is relevant by virtue of being inseparable from, or inextricably intertwined with, the charged offense. 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 111 at 628 (2d ed. 1994).

In the instant case, the inseparability of the child's prior injuries was manifested by the manner in which the authorities became aware of the offense. Although Ross was charged for breaking his son's arm, the treating physician initially had little reason to suspect abuse upon presentation of a child with a broken arm. Only after the arm was set, when precautionary x-rays were taken, did the physician suspect abuse and notify the authorities. When, as here, the victim is unable to speak for himself, one broken bone might well be viewed as an unfortunate but isolated accident, unless and until viewed in the context of multiple broken bones in various stages of healing.

Characterization of the prior injuries as part of the *res gestae* does not, however, render that evidence admissible. The district court employed commendable caution in analyzing evidence of the child's prior injuries as "prior bad acts" evidence under W.R.E. 404(b). Admissibility of such evidence is determined by the four-part *Vigil/Herndon* test:

> "Such evidence is admissible if: 1) the evidence is offered for a proper purpose; 2) the evidence is relevant; 3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and 4) upon request, the trial court instructs the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted."

*Vigil*, 926 P.2d at 357 (*quoting Herndon*, 982 F.2d at 1414).

1. **Proper purpose.** Ross hotly contested the identity of his son's abuser, claiming that his wife was the "real abuser." Having done so, he is poorly situated to claim that the prior bad acts evidence could not properly be admitted on the issue of the real abuser's true identity. Specifically, the evidence concerning the great amount of force necessary to infliction of such injuries permitted the jury, as finder of fact, to infer that it was Ross, and not his wife, who perpetrated such forceful abuse upon their son.

2. **Relevance.** From our discussion of the *res gestae* characterization made by the district court, it should be clear that the victim's prior injuries in this case were *relevant* to the charge upon which Ross was tried, thus fulfilling the second prong of the *Vigil/Herndon* test:

> [Such] evidence was relevant for the purpose of demonstrating a "complete story," part of the history of the event, and as a "course of conduct." *Crozier v. State*, 723 P.2d 42 (Wyo.1986).

*Vigil*, 926 P.2d at 358.

3. **Probative value versus prejudicial effect.** Affronts to children inevitably carry the potential for inflaming the passions of a jury. *See, e.g., Britton v. State*, 845 P.2d 1374, 1376–77 (Wyo.1992). In this case, the district court was appropriately cognizant of such potential and took care to restrict admission of prior injury x-rays on the basis of potentially prejudicial impact. The line drawn by the district court represents a sensitive balance between the State's need for evidence probative of the abuser's identity and the right of Ross not to have his case prejudiced.

4. **Limiting instruction.** Finally, Ross made no record of a request for a limiting instruction if, in fact, one was requested. The responsibility for presenting this court with an adequate record rests with the appellant and it is, therefore, unnecessary to address the fourth prong of the *Vigil/Herndon* test. *Madrid v. State*, 910 P.2d 1340, 1344 (Wyo.1996).

To the extent that the victim's prior injuries may be construed as indirect evidence of Ross' prior bad acts, we hold such evidence properly admissible under the *Vigil/Herndon* test.

## C. PROSECUTORIAL CONDUCT

Ross accuses the State of having irrevocably prejudiced his case during opening statement through display of an x-ray to the jury and employment of inflammatory rhetoric. He offers no authority on point, reminding us only that prosecutorial statements calculated to inflame, prejudice or mislead the jury are not permitted in the context of closing argument and implying that a similar standard should govern opening statements. *James*, 888 P.2d at 207.

When the prosecutor tried to show an x-ray to the jury during his opening statement, Ross' trial counsel immediately objected. The district court noted, for the record, its doubt that the jury had seen any image, given a delay between the time the "view box" switch was thrown and the moment at which an image became visible. Nonetheless, the district court issued an immediate curative instruction to the jury and reserved its decision on Ross' motion for a mistrial. Later, when the x-ray in question was admitted, the motion for mistrial was denied.

██ It is true that the prosecutor's opening statement was subject to several other

objections, each of which the district court sustained. At issue, however, was neither unduly inflammatory rhetoric nor appeals to passion or prejudice. What Ross' counsel and the district court found objectionable was the prosecutor's use of argument. The prosecutor's opening statement did not overstate the evidence, but ill-advisedly discussed what the jury might logically infer from that evidence.

 As it had done with the "view box" incident, the district court reserved ruling on Ross' motions for a mistrial, conditioning final determination upon whether the prosecutor could produce, at trial, the evidence upon which his inferential conclusions were predicated. We are unpersuaded of any need, here, to depart from the rule that the trial judge is best situated to plumb the potential for injury arising from prosecutorial misconduct. *Christian v. State*, 883 P.2d 376, 381 (Wyo.1994). Here, the district court ruled that the evidence promised by the prosecutor was eventually delivered in admissible form, negating any prejudice arising from the prosecutor's opening statement. That decision fully complied with our rule that alleged prosecutorial misconduct must be viewed in the context of the entire trial, and we find no abuse of discretion in the district court's denial of Ross' request for a mistrial.

 Ross' next assignment of error stems from the district court's ruling concerning the victim's rib injuries. The district court agreed that testimony concerning the child's broken ribs would be admissible, but also ruled that x-rays portraying the multiple broken ribs were of sufficiently prejudicial impact to outweigh any probative value they might possess. The ruling permitted the State's medical expert to testify as to the child's broken arm, using an x-ray depicting both the arm and rib injuries as a "demonstrative exhibit," provided the x-ray would not go to the jury room and the expert would curtail any further discussion of the rib injuries. Shortly after that rather intricate ruling, in response to the prosecutor's question as to why the demonstrative x-ray was taken, the medical expert again impinged upon the forbidden topic of the broken ribs:

> This x-ray was taken to delineate some of the fractures that he had in his rib cage, to see how they were healing, and to see if any—
>
> [Defense objection].

Ross' appellate brief alleges the prosecutor *intentionally* elicited the foregoing "highly prejudicial" testimony. This allegation flies in the face of defense counsel's acknowledgment, at trial, that this final mention of the broken ribs was unintentional. This argument also ignores trial counsel's agreement that the problem was sufficiently addressed by the district court's refusal to allow the x-ray to be admitted as an exhibit.

Similarly, Ross' charge that the prosecutor's closing argument misstated testimony from a police officer ignores the district court's immediate review of the transcript of earlier proceedings and settlement of the record in favor of the prosecutor's questioned statement.

 Finally, Ross objects to the prosecutor's ridicule of the theory that the victim could have broken both arms in a fall from a bed onto a carpeted floor:

> He is a baby, flesh and bone. He is not a super ball. He didn't bounce and then gain velocity and speed and then hit harder on the other side, impossible, and you know it is impossible.

This argument was founded upon the testimony of the medical expert:

> The force required to break bones is great. You have to have a very large force, and to get a force, you either have to have a real heavy mass or a weight, or something moving very fast, so if you consider an infant rolling to the floor, he is not moving fast, so he doesn't have a high acceleration * * * neither [the child's] weight nor the height that he fell could contribute to the huge force it takes to break a bone.

 Like defense counsel, a prosecutor may review the evidence and argue inferences thereon. "The purpose of closing arguments is to allow counsel to offer ways of viewing the significance of the evidence." *Browder v. State*, 639 P.2d 889, 893 (Wyo. 1982). That to which Ross now objects was fair argumentation based upon facts of rec-

ord and we are unable to characterize it otherwise.

## V. CONCLUSION

By their very nature, crimes against individuals often evoke a more passionate response than crimes against property. Such is doubly true when the victim is a defenseless child. A guilty verdict based on admissible evidence is not, however, subject to reversal simply because the nature of the crime may ignite the passions of the fact finder.

Affirmed.

THOMAS, J., files a specially concurring opinion in which GOLDEN, J., joins.

THOMAS, Justice, concurring specially (in which GOLDEN, J. joins).

I agree the Ross conviction should be affirmed, and I concur in the result reached by the majority opinion. Consistently with my special concurring opinion in *Urrutia v. State*, 924 P.2d 965 (Wyo.1996), I would hold that the failure to object is fatal to an assertion on appeal that trial error occurred in connection with the admission into evidence of the guilty plea of Ross' wife.

In the concurring opinion in *Urrutia*, I said:

> The conclusion of the majority opinion is that a clear and unequivocal rule of law was violated, but that Urrutia failed to establish material prejudice. I quote from *Kwallek*, 596 P.2d at 1376:
>
>> As a general proposition, courts have found that prejudice results where the accused made timely objection[5] and has requested curative action by the trial court which refused or failed to eliminate the disclosure.

------

5. It is well established that the accused must register timely objection to the disclosure. *State v. Marshall and Brown–Sidorowicz, P.A.*, 2 Kan. App.2d 182, 577 P.2d 803, 817, and cases cited therein (1978).

I believe the *Kwallek* rule is clear in requiring a timely objection to the disclosure of a guilty plea by another person who has been charged with an offense arising out of the same circumstances. It is my rationalization of *Kwallek* that, in the absence of an objection by the defendant, there is no error. Hence, under the plain error doctrine, **no clear and unequivocal rule of law was violated.** (Emphasis in the original.) If *Kwallek* is not as clear as I read it, it is at best equivocal, and for that reason the rule of the case does not meet the plain error requirement.

> The reason, as I see it, why an objection is required to such a disclosure is that the circumstances of the trial are themselves inherently equivocal. When the prosecution seeks to introduce this evidence to blunt the effect of its being introduced on cross-examination, **the defendant may well prefer that it come in at that point.** It may be preferable as a matter of tactics to cross-examine about the details of the conviction and why the witness was able to make a deal with the prosecution.

*Urrutia*, 924 P.2d at 971 (Thomas, J., concurring specially) (emphasis added.)

This case serves as a crystal illustration of the principle I was endeavoring to articulate in *Urrutia*. I quote from the majority opinion:

> The question remains, however, of whether Ross was truly prejudiced by the State's introduction of his wife's guilty plea when that guilty plea was the very lynchpin of his defense.

> Ross' trial strategy was first articulated during *voir dire* when his counsel asked a prospective juror: "Did you read in the paper that both the husband and the wife were accused of this [child abuse]?" During opening statement, counsel for Ross promised to create doubt as to whether it was Ross or his wife who actually abused their son. Ross' theory was that Mrs. Ross had been the "real abuser," but had engineered a plea agreement with the prosecutor in return for her testimony implicating Ross. Central to such a theory was elucidation of Mrs. Ross' plea bargain, through her testimony. * * *

> Given Ross' theory of the case, it is apparent that what truly would have prejudiced his defense would have been a refusal on the part of the State to talk about his wife's conviction.

I submit that this discussion demonstrates the wisdom found in footnote 5 of the opinion in *Kwallek v. State*, 596 P.2d 1372 (Wyo. 1979), which the majority of the Court continues to ignore. It appears that it may be regarded as dictum, and that is true because the material facts in *Kwallek* encompassed an objection. The footnote stands, however, as a clear articulation of the rule that would apply in the absence of objection. Given the dynamics specifically disclosed in this case, but present by implication in every instance in which no objection is voiced to a guilty plea by another person charged with an offense arising out of the same circumstances, we should not recognize a claim of plain error because of the admission of such evidence. If any error is to be considered under such circumstances it would have to relate to a claim of ineffective assistance of counsel.