William Charles MAZUREK,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 98–185.

Supreme Court of Wyoming.

Aug. 16, 2000.

Representing Appellant: Tina N. Hughes, Cheyenne, Wyoming.

Representing Appellee: Gay Woodhouse, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Kimberly A. Baker, Senior Assistant Attorney General. Argument by Ms. Baker.

Before LEHMAN, C.J., and THOMAS, MACY,* GOLDEN and HILL, JJ.

GOLDEN, Justice.

A jury convicted Appellant William Charles Mazurek (Mazurek) of conspiracy to commit burglary, burglary, and interference with a peace officer, in violation of Wyo. Stat. Ann. §§ 6–1–303, 6–3–301, and 6–5–204 (Lexis 1999), respectively. Mazurek appeals from the conspiracy to commit burglary and burglary convictions, complaining that admission of inadmissible testimony, ineffective assistance of counsel, and prosecutorial misconduct denied him a fair trial. He also claims that plea bargains with two of the State's witnesses against him violated 18 U.S.C. 201(c)(2) and Wyo. Stat. Ann. § 6–5–102(a)(ii), requiring reversal of his conviction. He does not, however, appeal from the conviction for interference with a peace officer.

Contrary to Mazurek's contentions, plea agreements do not violate 18 U.S.C. 201(c)(2) or Wyo. Stat. Ann. § 6–5–102(a)(ii) (LEXIS 1999). However, on direct examination, the prosecutor elicited inadmissible testimony

* Retired June 2, 2000.

from the alleged accomplices involved in the crime. Although Mazurek did not object to the testimony or the prosecutor's improper use of that testimony during the trial and in closing arguments, we hold the error committed rises to the level of plain error because the prosecutor's conduct effectively denied Mazurek his right to a trial on the merits. Therefore, we reverse.

## ISSUES

Appellant presents the following issues for review:

1. Did the State's offer, and the admission of, two witnesses' testimony that they were convicted of offenses arising out of the circumstances leading to Appellant's trial, and the State's repeated argument concerning those convictions, violate Appellant's right to have a trial on its own merits, and did such testimony constitute plain error?

2. Did Appellant's trial counsel's failure to object to the above testimony and the prosecution's repeated references to "accomplices" constitute ineffective assistance of counsel?

3. Did the prosecution's argument concerning the severance of the charge of interference with a police officer constitute prosecutorial misconduct, in that the prosecution represented to the trial court that it would be offering evidence of incriminating statements that could not be separated from the incident of interference, and then no such evidence was offered?

4. Did the trial court err in admitting testimony of a threat allegedly made by Appellant to a witness outside the courtroom?

5. Did the prosecution's statements in closing arguments concerning the weight and credibility of the testimony and evidence constitute prosecutorial misconduct which resulted in plain error?

6. Did the plea bargains and subsequent testimony of witnesses Jamie Scheschi and Aaron Morran violate 18 U.S.C. 201(c)(2) and W.S. 6–5–102(a)(ii), and result in reversible error?

Appellee phrases the issues as follows:

I. Whether plea agreements with two witnesses who testified against Appellant require reversal of Appellant's conviction?

II. Whether plain error was committed when two witnesses testified they were convicted of offenses arising out of the same circumstances which led to Appellant's trial?

III. Whether statements made by the prosecutor deprived Appellant of a fair trial?

IV. Whether Appellant received effective assistance of counsel?

V. Whether the trial court erred when it admitted testimony by a witness whom Appellant had threatened outside the courtroom?

## FACTS

On July 8, 1997, Mazurek, Jamie Scheschi and Aaron Morran were at the home of Tammy Wade. After spending several hours drinking, the three left Wade's home. At Mazurek's trial, Scheschi and Morran testified that Mazurek accompanied them while they drove around town, then returned to Wade's house to store some pallets they had retrieved from the Country General store. After storing the pallets in Wade's garage, the three broke into the victim's garage and removed numerous items. They then drove to Scheschi's where they slept for awhile. Upon awaking, they began to drive to Colorado, but Scheschi's truck broke down, preventing further travel. Mazurek hitched a ride back to town and borrowed Wade's vehicle. When he returned to where his friends were stranded, they loaded the stolen items into that vehicle and drove to Greeley, Colorado. After stopping to talk to friends in Greeley, they drove to Loveland, Colorado, where the three then pawned several of the items for about $300. They split the money and returned to Cheyenne.

Several weeks later, Detective Greg Way questioned Mazurek at the police station about the burglary of the victim's garage. After the interview, Detective Way told Ma-

zurek he was under arrest and handcuffed him. Mazurek asked Detective Way to give him another chance, saying, "Ok, I was there, please give me another chance." As Detective Way unlocked the car door to transport him to the jail, Mazurek fled. Detective Way chased and caught Mazurek within a short distance and, after subduing him, transported him to the jail.

Mazurek was charged with conspiracy to commit burglary, burglary, and interference with a peace officer. Mazurek's theory of defense was that Scheschi and Morran dropped him off before returning to Wade's house. When he returned to Wade's house the next day, the two men asked him to accompany them to Colorado, where Scheschi's truck had broken down. When the three arrived at the truck, they unloaded what Mazurek believed to be Scheschi's property, which Scheschi pawned in Loveland, Colorado.

During deliberations, the jury informed the district court that it was deadlocked on the counts of conspiracy to commit burglary and burglary. They were given an *Allen* instruction and continued to deliberate. The next morning, they found Mazurek guilty of all charges. He was sentenced on April 3, 1998, and filed this appeal shortly thereafter.

## DISCUSSION

*Testimony of Guilty Plea Solicited by the Prosecution*

■ During voir dire, examination of witnesses and closing argument, the prosecutor referred to the witnesses as "accomplices" and emphasized the witnesses' convictions. Mazurek contends that under our holding in *Kwallek v. State,* 596 P.2d 1372, 1375 (Wyo. 1979), the prosecution's solicitation of Scheschi's testimony that he entered a plea of guilty to conspiracy and burglary, and Morran's testimony that he entered a plea of guilty to burglary, was plain error requiring reversal of his conviction. In *Kwallek,* we held that the admission of the testimony of a co-conspirator, that he had entered a plea of guilty to conspiracy, over the objection of counsel, was reversible error. "[T]he rationale of the rule holding the admission of such

evidence to be prejudicial error is said to be that it is irrelevant and incompetent because it suggests that since the confederate is guilty, the defendant must also be guilty, and this inference violates the defendant's right to have his trial on its own merits." *Kwallek,* 596 P.2d at 1375–76 (citing *State v. McCarthy,* 567 S.W.2d 722 (Mo.App.1978)).

■ At the outset, we note that Mazurek raised no objection to these activities. Therefore, we consider these claims under a plain error standard of review. "Plain error exists when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him." *Yetter v. State,* 987 P.2d 666, 668 (Wyo.1999) (quoting *Sandy v. State,* 870 P.2d 352, 358 (Wyo.1994)); *see also Mora v. State,* 984 P.2d 477, 480 (Wyo.1999).

We need spend little time on the first two prongs of our plain error analysis. It is clearly shown in the record that at the end of his direct examination, the prosecutor asked Scheschi and Morran if they had entered guilty pleas to charges arising from the burglary of the victim's garage, to which each gave an affirmative response. It is also clearly improper for the prosecutor to elicit such testimony. *See Kwallek,* 596 P.2d at 1375–76, and the cases and annotation cited therein; *Ross v. State,* 930 P.2d 965, 968 (Wyo.1996). We presumed *Kwallek* made it clear, to prosecutors and defense counsel alike, that prosecutors are not permitted to elicit this type of testimony on direct examination. Such testimony is inadmissible evidence because it is irrelevant and incompetent evidence which the jury may use improperly. *See id.* In *Ross,* we opined:

The State's opening statement promised the jury evidence that Ross' wife had previously admitted guilt to a misdemeanor charge of failing to protect her son from his father. When that promise was fulfilled, the absence of a timely objection by Ross' trial counsel would not appear sufficient to save the State's case from reversal, predicated on the rule of *Kwallek v. State,* 596 P.2d 1372 (Wyo.1979). *Kwallek,*

as reaffirmed by *Urrutia*, [*v. State*, 924 P.2d 965 (Wyo.1996)] contemplates situations in which two individuals are prosecuted for different offenses arising out of the same circumstance, rendering "the fact that one has pleaded guilty * * * inadmissible against the other." *Kwallek*, 596 P.2d at 1375.

*Ross*, 930 P.2d at 968.

Whether the third prong of our plain error test is satisfied requires more in depth analysis, however. In order to show that the error was prejudicial, Mazurek must demonstrate that he was not allowed a trial on its own merits. In *Kwallek*, we did not find the defendant was prejudiced merely because testimony of a guilty plea was presented. Rather, our holding rested on the fact that the circumstances in that case encouraged the jury to believe the admissions were valid circumstantial evidence that the accused was also guilty. *Kwallek*, 596 P.2d at 1376.

In *Kwallek*, the defense filed a motion in limine before trial and objected to the testimony during trial. *Id.* at 1375–76. The prosecutor asked Kwallek's confederate if he was charged in the same incident, if his case was completed, and what happened in his case. *Id.* at 1375. The witness told the jury he pleaded guilty, and questioning by the prosecutor ceased. *Id.* Under those circumstances, we held:

> Since the court twice refused to prevent the disclosure, it is improbable that the Judge would have either directed the jury to disregard the testimony or have given a curative instruction had they been requested. The probability is, therefore, that the jury was left with the impression that, since the total evidence connected the defendant with [the witness] in the altercation with [the victim], the court must have wanted the jury to understand that, since [the witness] had pleaded guilty, it must be that the defendant is also guilty.

*Id.* at 1376. We found the error was prejudicial and reversed and remanded for a new trial. *Id.*

■ On appeal, Mazurek complains that the prosecutor improperly encouraged the jury to use the guilty pleas as substantive evidence of his guilt. Mazurek did not object

at trial, and we will only grant a new trial if the prosecutor's actions amounted to plain error. "Because plain error analysis requires us to examine the record as a whole, in ruling on the appellant's contentions we necessarily consider the effect of these alleged errors on the trial collectively." *United States v. Mitchell*, 1 F.3d 235, 240 (4th Cir.1993). Therefore, the pertinent portions of the closing arguments of both the defense and the prosecution follow. In its closing the defense argued:

> What did they bring you? Did they bring you his fingerprints from the shop? Did they bring you hair? Did they bring you anything showing he was ever in the shop? It's their burden to bring you the evidence to prove it beyond a reasonable doubt. 1998, you got nothing or any type of forensic scientific DNA, any type of evidence.

> What they brought you was James Scheschi and Aaron Morran, two burglars facing 10, 20 years and awaiting to be sentenced, to see what they get. You have to ask yourself, do you trust them? You saw them, you heard them. Do you trust them? If they offered you some great deal on some land they had, would you buy it? If you're not going to make a property decision based on what they tell you, can you make a decision beyond a reasonable doubt on something that is as serious as this based on what they tell you?

The defense then noted the inconsistencies in the stories from the two witnesses, and argued that when people are lying, they miss the details. He gave specific examples of lies and inconsistencies in their stories, which included: did they go to Country General and take pallets once or twice that night and who kicked in the door to the garage? He then asked the jury to consider why neither one could remember who kicked in the door:

> Maybe the one that kicked in the door is the one who is going to get the harder sentence. In their criminal minds they're playing some games. Do I give a little bit of truth, do I give lies, throw in a little bit of this? They play the games. Why do they do it? The whole reason they're here

in the first place, they don't—they only care about one thing, and that's their sentence. That's why they're here.

That's why they're willing to lie. That's why they're refusing to admit who kicked in the door. They're only here for one purpose, not to tell the truth, not to clear up any crime. They're only here because they're waiting to be sentenced. You can't trust that. If they were breaking into your property, and we know that they'll steal your things, they'll drive around town drunk, they will lie to you in a second.

Instruction 6–A tells you that if you believe a witness has testified falsely about a material fact, has lied to you about something important in this case, you can disregard everything they say. Why do we have that instruction? Because we don't convict people on the word of liars. That's what the law tells you to do.

Will was there, was certainly there many parts of all of this. He wasn't there when they broke in and stole these items. He certainly was there at different parts. That's what he said. He said he was there. He didn't say I broke into the shop.

The defense also reminded the jurors of the two witnesses who testified for the defense: the paperboy, who saw two men by the garage that night; and the victim's daughter, who saw two men at Ms. Wade's home the next day. Their testimony conflicted with the testimony from the prosecution's witnesses and confirmed Mazurek's defense. Mazurek argued that the only explanation for what his witnesses saw was that Mazurek wasn't there during the burglary, and the victim's daughter saw two men because Mazurek was at Wade's house and not with Morran and Scheschi. Therefore, Morran, not Mazurek, hitched a ride into town to get Wade's vehicle.

Finally, the defense asked the jury to remember:

During the jury selection, you were all seated there, there was only one question that [the prosecutor] asked each of you individually. He asked general questions but asked each of you, said your name, asked each of you individually only one question during jury selection, and that was what do you think about accomplices. That was because he understood that you were going to have to believe these accomplices for him to have a case.

That is the case. That's why that's the only question he asked individually to you. What he didn't tell you was that not only was he saying they were accomplices, but what they've shown you is that they're liars, they are drunks. They make stories up that contradict each other, that contradict other more credible witnesses, and that they are waiting to be sentenced, hoping for probation.

You can't trust them, because they're not trustworthy. You would not in your daily life trust them. You cannot trust them here. There was no conspiracy. There was no understanding. There was no mutual understanding, no agreement. There was no burglary involving Will. There was a burglary involving two men, Aaron Morran and James Scheschi.

On rebuttal, the prosecutor responded by telling the jury that asking for evidence like DNA and fingerprints is trying the police department and a waste of time and money. He argued this is especially so because, "You've got two people that came off it and said they did it, and they incriminated a third." The prosecutor told the jury, "The hard evidence in the case is what [Scheschi] and what [Morran] told you. That is uncontradicted in this case coupled with this defendant showing up in the pawn shop down in Loveland." He continued:

We know there's three guys in the hock shop. This defendant is one of them. That's one of those sides [sic] issues. When you don't have anything else to do you, you've got the insanity defense. That doesn't work most of the time. You've got self-defense. You've got some other dude did it. That's what this one is about. Two did it. Then they say the third did it, or we try the victim, or we try the police department, we try the DA.

Let's divert the real case outside into immaterial areas and say well, if the guy lied about the ID card, then he's lying

about everything. The instruction says that you can disregard testimony if you think he lied by necessity or not on material facts, which is an important fact, not the collateral facts. So don't get the smoke and mirrors job going in front of your face. Get right down to the hard evidence, the hard, uncontradicted evidence.

The prosecutor then asked the jury to consider the fact that Mazurek fled from Detective Way after he was handcuffed, and to

[c]ouple that with the testimony by the accomplices. They are accomplices, no question about it. Accomplices are kind of like dealing with—dealing with informants in drug cases, guys working off beefs, you know. They're great fun on cross-examination, usually former addicts or something like that. You can have a ball with those people. Same thing with accomplices. These guys are fair game, sitting duck target up there.

They got up there under oath, told you what happened, told you truthfully. The deals were this, that they would testify truthfully; and that's what they did, exactly what they did. Accomplices and informants, great fun.

I think one of the jurors made comments about he didn't like finks or narcs or something like that. Well, that's fine. Everyone's entitled to their opinion. You've got to weigh the testimony, look at the surrounding facts. This man lost a lot of stuff out of his garage. Three guys involved, three guys down in Denver (sic) trying to hock the stuff.

Jamie and Aaron, they've came in, paid their dues, took their medicine; and now they're waiting to see what the Court is going to do with them. They're going to have the snitch jacket the rest of their life. They're going to wear that, whether they like it or not.

A threat is made right here outside in the hallway by this defendant upon Jamie. Is that evidence of a man who is innocent? Of course not. It's an attempt to—at retribution. It's a threat by what Jamie said. He makes that threat to Jamie, a fellow that he's known since back in fifth or sixth

grade. These guys hope they're going to get probation. That's up to the Court, not a sure thing.

* * *

You have to deal with these kinds of people, accomplices; otherwise you just say okay, Mr. Prosecutor, don't bring these kinds of things in our Court. We don't want to mess with these kinds of cases, give them a free ride, cut them out, cut them out. If that's what you want to do, you are personally capable of saying I don't believe anybody in this case.

But you've go [sic] to look at the evidence. You've got to look at what these kids said. Theirs is a done deal. They've made their peace with the system a long time ago. They came in, obviously reluctant, then a threat is made on one of them. Put all of these things together, the defendant running from the facts in this case, running from the officer. Put that on there, the defendant by stipulation down there in Colorado. The gaps are filled in by Aaron, and the gaps are filled in by Aaron and Jamie. That's what this case is about. This is not about how intoxicated they were. Obviously they were drinking and drunk.

If I was to ask everyone of you persons to start in the back row and tell us about a summer vacation, by the time it got to the 13th juror you wouldn't even recognize your trip, and you weren't even drunk at the time. Let's look at the hard core facts in the case. In cross-examination, again, these guys are a lot of fun to go after, accomplices and informants in drug cases. If you ever sit in on a drug case, you'll watch it there. It's a great sport. They're usually not very intelligent people, often made a bad judgment to get themselves involved in this.

There's an old story, when you sleep with the dogs, you get fleas. These three guys are together, no question about it. Two of them took their medicine, and it's time for you to tell this defendant it is time for his. The evidence is there. The case

is there beyond all doubt, not just reasonable doubt, but all doubt.

In *United States v. Mitchell*, the court considered several factors when evaluating whether there was prejudicial plain error at the trial level. Those factors included: 1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and prejudice the accused; 2) whether the remarks were isolated or extensive; 3) the strength of competent proof to establish guilt, absent the remarks; 4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; 5) the presence or absence of a limiting instruction; 6) whether there was a proper purpose for introducing the conviction; 7) whether the conviction was improperly emphasized; 8) whether the conviction was used as substantive evidence of guilt; 9) whether the error was invited by defense counsel; 10) whether the failure to object could have been the result of tactical decisions; and 11) whether, in light of all the evidence, the error was harmless.[1] *Mitchell*, 1 F.3d at 241–42 (citing and quoting *United States v. Harrison*, 716 F.2d 1050, 1052 (4th Cir.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2345, 80 L.Ed.2d 819 (1984)); *United States v. Miranda*, 593 F.2d 590, 594 (5th Cir.1979)).

First, we note that the prosecution did not appear to have a proper purpose for introducing the testimony concerning the guilty pleas, and his comments misled the jury into thinking the pleas were substantive evidence of Mazurek's guilt. Second, the prosecutor's remarks were not isolated. During voir dire and throughout the trial the prosecutor referred to Scheschi and Morran as "accomplices," rather than witnesses; he elicited testimony that they had already pled guilty to the crime; and then in closing argument asked the jurors to use the guilty pleas of those accomplices as substantive evidence of Mazurek's guilt. Third, the competent proof

to establish Mazurek's guilt was not strong. The State relied heavily on the testimony of Scheschi and Morran. In addition, the jury found itself at an impasse on the burglary counts and was given an *Allen* instruction before it came to a decision.

 Fourth, no limiting instruction was given. Generally, the trial court should instruct the jury that evidence of a witness' conviction may be used only for the limited purpose of impeachment and not as substantive evidence of guilt. *Mitchell*, 1 F.3d at 242 (citing *United States v. Davis*, 838 F.2d 909, 917 (7th Cir.1988)). In this case, the trial court failed to give such a limiting instruction, in spite of the fact that *Kwallek* has been the law in Wyoming since 1979.[2] As was the situation in *Mitchell*, so is the situation here that the extent of the prosecutor's comments make it difficult for this Court to believe that any limiting instruction could have cured the prejudicial effect of those improper comments. *Id.* at 243.

Fifth, the convictions were emphasized and used as substantive evidence of guilt. The prosecutor used the term "accomplice" throughout the trial when referring to Scheschi and Morran. The prosecutor also impermissibly urged the jury, "[t]wo of them took their medicine, and it's time for you to tell this defendant it is time for his. The evidence is there." The prosecutor's comments did not go to the credibility of the witnesses. In *Kwallek*, the prosecutor did not seize upon the testimony and use it in his argument to the jury, yet we found the testimony was prejudicial and that Kwallek had been denied a fair trial. *Kwallek*, 596 P.2d at 1375–76. The prosecutor's conduct in this case is particularly egregious because he encouraged the jury to convict Mazurek for an impermissible reason: because Scheschi and Morran had been convicted of participating in the same conspiracy. In the State's closing argument, the clear thrust was that the witnesses' convictions should be used a substan-

---

1. These factors are not exhaustive, and not all of the factors need be shown. We merely use them as a guideline for review of plain error, weighing the factors to determine whether plain error has been committed.

2. We take this opportunity to admonish prosecutors and defense counsel alike. If defense counsel wishes to use guilty pleas and the deals struck in exchange for those pleas to impeach witnesses, the attorneys and the trial court must use care to ensure the jury does not use that testimony improperly.

tive evidence of Mazurek's guilt. This is obviously improper.

Sixth, defense counsel did not invite the error. He did not refer to the pleas in opening argument and the testimony was elicited by the prosecutor on direct examination. On cross-examination, defense counsel asked questions which expanded on that testimony, asking both witnesses what was received in return for their plea and agreement to testify. Defense counsel's questioning was to further the defense theory, presented in opening argument, that only two men were present when the victim's garage was entered. According to the defense, Scheschi and Morran were fabricating Mazurek's involvement in order to get a more lenient sentence for themselves. It is important to note at this point that the defense is permitted to use guilty pleas to attack witness credibility. It is not permissible, however, for the State to elicit this testimony on direct examination or to use it as substantive evidence of guilt. *See Kwallek,* 596 P.2d at 1375–76; *Ross,* 930 P.2d at 968–69; *Urrutia v. State,* 924 P.2d 965, 969–70 (Wyo.1996).

Seventh, while we acknowledge that defense counsel failed to object to the prosecutor's improper comments, we are not convinced that his failure to object was based on tactical reasons. "[W]hat tactical reason could exist to allow the prosecution to advance improper arguments that are likely to result in the conviction of one's client?" *See Mitchell,* 1 F.3d at 243.

Finally, the State's case hinged on the testimony of Scheschi and Morran. Mazurek presented testimony from other witnesses which conflicted with the State's version of events. Mazurek was entitled to have the jury consider the conflicting inferences to be drawn from that evidence without the impermissible taint of the State's arguments that his "accomplices" had taken their medicine, therefore, Mazurek should take his too. Thus, we conclude the error was not harmless.

In sum, the factors employed in *Mitchell* weigh in favor of Mazurek. The only factor in the State's favor is the lack of objection by defense counsel.

[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the·conviction cannot stand.

*Mitchell,* 1 F.3d at 244 (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)).

Although we afford wide latitude to counsel in making closing arguments, urging the jury to convict a defendant because his alleged accomplices have pled guilty crosses the line. The prosecutor's remarks in this case illustrate a clear case of overreaching. Not content with its case against Mazurek, the prosecution used improper testimony and improper closing argument to obtain a conviction. Examining the record as a whole, these errors put the fairness of the trial into serious question, requiring reversal and a new trial. *See Mitchell,* 1 F.3d at 244.

*Plea Agreements*

■ Appellant claims that by reaching plea agreements with Scheschi and Morran, the State violated 18 U.S.C. § 201(c)(2) (1994) and Wyo. Stat. Ann. § 6–5–102(a)(ii). He contends that since the two witnesses testified against him at trial and received favorable treatment for their testimony, his conviction must be reversed. Whether plea agreements with witnesses who testify against a defendant require reversal of a defendant's conviction requires an analysis of the pertinent statutes.

Applicable general principles of statutory construction include: if the language is clear and unambiguous, we must abide by the plain meaning of the statute; if a statute is ambiguous, we may resort to general principles of construction; an ambiguous statute is one whose meaning is uncertain and susceptible of more than one meaning; and in a criminal statute, an

ambiguity should be resolved in favor of lenity.

*Pierson v. State*, 956 P.2d 1119, 1125 (Wyo. 1998). This Court construes statutes in pari materia, giving effect to each word, clause, and sentence so that no part will be inoperative or superfluous. *McAdams v. State*, 907 P.2d 1302, 1304 (Wyo.1995). We will not construe a statute in a manner which renders any portion meaningless or produces an absurd result. *Pierson*, 956 P.2d at 1125.

■ During the course of Mazurek's trial, Scheschi and Morran testified as witnesses for the State. Each witness entered into a plea agreement with the prosecutor which required him to cooperate with the State, including truthful testimony in Mazurek's trial. Mazurek claims that the State's offer of "something of value" for their testimony against him violated 18 U.S.C. § 201(c)(2) (1994), which provides in pertinent part:

> Whoever * * * directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court * * * authorized by the laws of the United States to hear evidence or take testimony * * * shall be fined under this title or imprisoned for not more than two years, or both.

Mazurek's argument is based on *United States v. Singleton*, 144 F.3d 1343 (10th Cir. 1998), which was decided on July 1, 1998 in the United States Tenth Circuit Court of Appeals. The 1998 *Singleton* opinion held that the government violated 18 U.S.C. § 201(c)(2) by entering into a plea agreement that promised leniency to a witness in consideration for his trial testimony. On July 10, 1998, however, the opinion was vacated and the matter set for hearing en banc, resulting in *United States v. Singleton*, 165 F.3d 1297 (10th Cir.) (en banc), *cert. denied*, 527 U.S. 1024, 119 S.Ct. 2371, 144 L.Ed.2d 775 (1999) (*Singleton*), which was published after Mazurek's brief was filed in this case, but two weeks before the State filed its brief in the matter.

■ *Singleton* reversed the 1998 opinion when a majority of the en banc court held that 18 U.S.C. § 201(c)(2) does not apply to the United States acting in its sovereign capacity and thus does not include an assistant United States attorney who is acting as an alter ego of the United States in offering an accomplice leniency in exchange for truthful testimony. *Id.* at 1299–1300. We agree with the Tenth Circuit's conclusion that applying this federal statute to a government agent who is functioning within the official scope of the office would be absurd. *Id.* at 1300; *and see United States v. Guillaume*, 13 F.Supp.2d 1331, 1333 (S.D.Fla.1998) (the application of § 201(c)(2) to the government works an obvious absurdity and threatens to hamper the effectiveness of the government in the investigation and prosecution of crime); *United States v. Eisenhardt*, 10 F.Supp.2d 521 (D.Md.1998) (calling the 1998 *Singleton* decision "amazingly unsound" and nonsensical"). The practice of using plea agreements is long-standing and is a legally sanctioned process. *See, Brady v. United States*, 397 U.S. 742, 751–52, 90 S.Ct. 1463, 1470–71, 25 L.Ed.2d 747 (1970).

■ Mazurek also contends the plea agreements violated Wyo. Stat. Ann. § 6–5–102(a)(ii) (LEXIS 1999), which provides in pertinent part:

> (a) A person commits bribery, if:
> * * *
>
> (ii) While a public servant, he solicits, accepts or agrees to accept any pecuniary benefit, testimonial, privilege or personal advantage upon an agreement or understanding that his vote, exercise of discretion or other action as a public servant will thereby be influenced.

The legislature appears to be concerned about public officers benefitting personally from their position as a public servant. Plea agreements have long been a sanctioned and useful tool in criminal proceedings, and, if the legislature intended to outlaw plea agreements when it enacted Wyo. Stat. Ann. § 6–5–102(a)(ii), it certainly would have explicitly so provided. Accordingly, we presume the legislature did not intend to preclude the use of plea agreements and hold that the plea

agreements in this case did not violate Wyoming law.

*Prosecutorial Misconduct*

 Appellant claims prosecutorial misconduct in the State's argument against severing the charges for trial and in closing argument. Claims of prosecutorial misconduct are reviewed

by reference to the entire record and hinge on whether a defendant's case has been so prejudiced as to constitute denial of a fair trial. Similarly, the propriety of any comment within a closing argument is measured in the context of the entire argument. A trial court's rulings as to the scope of permissible argument will not be disturbed absent a 'clear or patent' abuse of discretion. Even then, reversal is not warranted unless a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict.

*English v. State*, 982 P.2d 139, 143 (Wyo. 1999); *Gayler v. State*, 957 P.2d 855, 860 (Wyo.1998) (quoting *Arevalo v. State*, 939 P.2d 228, 230 (Wyo.1997) (emphasis omitted)). However, the defense failed to object during the prosecution's closing argument. Consequently, we review that claim under our plain error standard. *Mitchell v. State*, 982 P.2d 717, 723–24 (Wyo.1999).

 Mazurek filed a motion to sever Count III, interference with a peace officer, for trial. He argued it would be prejudicial to try the charges together due to the allegation that he ran from the officer while being arrested for the other charges. The district court denied his motion. Mazurek claims the prosecutor misled the trial court when he told the court the testimony concerning the interference with a peace officer charge was necessary to and a part of the evidence in the burglary case, because the prosecutor did not use that evidence at trial. Our review of the record tells us this is not so.

During the hearing on the motion to sever, the prosecutor told the trial court that Mazurek made an incriminating statement and fled from the officer upon being told he was under arrest. During the trial, Detective Way testified that, when he told Mazurek he was under arrest, Mazurek asked for another chance and said he was there. Detective Way also testified that Mazurek fled from him after he placed Mazurek in hand cuffs. We cannot say the record is clear that the prosecutor misled the trial court. Therefore, we find no plain error.

 Mazurek also claims the prosecution's closing arguments concerning the weight and credibility of the evidence constituted prosecutorial misconduct. We find several instances of improper comments in those portions of the prosecution's closing argument quoted earlier in this opinion. Because we are reversing this case for improper use of witnesses' guilty pleas, we decline to perform a plain error analysis here. However, perhaps we must again admonish counsel:

"it is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence of the guilt of the defendant." ABA Standards for Criminal Justice, The Prosecution Function, Standard 3–5.8 (1980). Prosecutors, as well as attorneys in general, acting as counsel in particular cases, are prohibited from attesting to facts or asserting as fact their personal beliefs relating to matters in issue. *Ross v. State*, 8 Wyo. [351,] at 372, 57 P. 924 [ (1899) ]. They are not to be witnesses testifying through their closing. *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

*Browder v. State*, 639 P.2d 889, 893 (Wyo. 1982). In addition, it is improper closing argument to ask the jury to convict a defendant for any reason other than the evidence before it. *Gayler*, 957 P.2d at 861.

Perhaps we must remind both prosecutors and defense counsel, again, about their respective roles with respect to this particular issue. *See, e.g., Dice v. State*, 825 P.2d 379, 384–85 (Wyo.1992) and *Browder v. State*, 639 P.2d 889, 893–95 (Wyo.1982). I hope they reflect on their solemn responsibilities. I hope they rededicate themselves to pursuing the ideal of justice, of fairness, of due process. I hope

they get the message. The survival of our system of justice depends on it.

*Vargas–Rocha v. State*, 891 P.2d 763, 773 (Wyo.1995) (Golden, C.J., specially concurring, with whom Lehman, J., joins).

*Ineffective Assistance of Counsel*

Mazurek also contends that he received ineffective assistance of counsel when his attorney failed to object to the prosecution's questions regarding the guilty pleas. Because we reverse and remand for a new trial based on other issues, we decline to address whether counsel provided effective assistance of counsel, as required by the United States and Wyoming Constitutions. *Engberg v. State*, 874 P.2d 890, 892 (Wyo.1994) ("The appellate court will not consider questions or errors which are not likely to arise on another trial, or questions or errors which will be presented in a different manner on another trial.") (quoting 5 C.J.S. *Appeal & Error* § 705 at 122 (1993)).

■ Our decision not to consider the issue is based on an assumption that both the defense counsel and the prosecutor will heed our discussion concerning the use of guilty pleas and prosecutorial misconduct, and that this will not occur again on retrial. *See id.* Testimony concerning guilty pleas of others associated with the same criminal incident is inadmissible, except under limited circumstances. We exhort prosecutors and defense counsel to use care when such testimony is introduced. We propose notification to the trial court, before trial, as well as proper limiting instructions. In addition, prosecutors should not elicit such testimony on direct examination and may not use the information improperly if it is introduced by defense counsel.

*Evidence of Threat*

■ Mazurek further claims reversible error in the admission of testimony that he threatened a witness in the hallway after the witness testified against him. Rulings on the admissibility of evidence are within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of a clear abuse of discretion. *English*, 982 P.2d at 143. We will not overturn a trial

court's discretionary decision unless the court acted in a manner exceeding the bounds of reason and could not rationally conclude as it did. *Id.*

■ The trial court, over Mazurek's objection, allowed Scheschi to return to the witness stand after a break in the trial. Scheschi testified that Mazurek passed by him in the hallway and said, "It's your ass." At trial and on appeal, Mazurek claims the testimony was prejudicial and not relevant to the proceeding. W.R.E. 401 defines relevant evidence as:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

However, even when evidence is relevant, the trial court may exclude relevant evidence

> if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

W.R.E. 403.

The trial court did not abuse its discretion when it determined "if there's threats, we ought to know about it." The testimony was relevant to Mazurek's consciousness of guilt. *See e.g., King v. State*, 780 P.2d 943, 962 (Wyo.1989) (jury instruction allowing jury to consider threat made by defendant to a witness as evidence of his guilt is "well-settled law"); *Opie v. State*, 389 P.2d 684, 690 (Wyo. 1964) (threat against a third person is admissible when circumstances are shown which indicate some relation or connection between the crime at issue and the third party threatened).

When reviewing evidence for admissibility under W.R.E. 403, the trial court must balance the potential for unfair prejudice against the probative value of evidence. *Trujillo v. State*, 953 P.2d 1182, 1186 (Wyo. 1998) (citing *McDermott v. State*, 897 P.2d 1295, 1298 (Wyo.1995)). The testimony did not distract the jury from the question of whether Mazurek committed the charged crime, *id.*, and it was neither unduly inflam-

matory nor introduced solely to inflame the jury. The trial court did not err when it allowed Scheschi to testify concerning the comment Mazurek made to him in the hallway. Therefore, we affirm the trial court's decision to allow the testimony at trial.

## CONCLUSION

Because the prosecutor improperly used evidence of guilty pleas by Scheschi and Morran as substantive evidence of Mazurek's guilt, we reverse. We find no error in the trial court's decision concerning the comment Mazurek made to Scheschi in the hallway after Scheschi testified. Neither federal nor Wyoming law prohibit prosecutors from entering into plea agreements with defendants. We assume counsel will heed our directives concerning the other issues raised by Mazurek in the new trial. Reversed and remanded for new trial.

THOMAS, Justice, concurring and dissenting.

I would affirm Mazurek's conviction. I agree with those aspects of the majority opinion that hold that plea agreements do not offend either federal or state statutes; there was no prosecutorial misconduct in connection with the argument against severing charges for trial; and the evidence of the threat was properly admitted. I have not been persuaded to renounce the views set forth in the concurring and dissenting opinion I authored in *Urrutia v. State,* 924 P.2d 965, 971–72 (Wyo.1996), and the concurring opinion I authored in *Ross v. State,* 930 P.2d 965, 972–73 (Wyo.1996). I would hold that, in the absence of objection to the evidence, no error occurred in the elicitation of guilty pleas from the co-conspirators. Further, I would find no reversible error in any of the other points asserted by Mazurek.

I would affirm this conviction.